■ The People of the State of New York, Appellant, v Luis Hernandez, Respondent.—Order of the Supreme Court, Bronx County, entered June 21, 1979, granting defendant's motion to suppress physical evidence and statements made, reversed, on the law, the motion denied, and the case remanded to the Supreme Court, Bronx County, for appropriate proceedings. There is no apparent material difference between the facts in this case and those in *People v Moore* (47 NY2d 911-912), where the Court of Appeals found probable cause. In *Moore*, "there was testimony that a police officer and a detective on anticrime patrol observed defendant walking down the street with a pillow case slung like a sack over his shoulder; that defendant was covered with snow and walking at a quick pace; that the detective saw what 'looked like' the outline of a television set in the sack; that the officer and detective asked defendant where he had come from and what was in the sack; that defendant replied that he was coming from a friend's house and that the sack contained a fur coat and a Sony television set; that upon the detective's request the defendant permitted inspection of the sack, which was found to contain a General Electric television, a fur coat and jewelry, and that defendant was then placed under arrest and taken to a police station." In the appeal before us, there was testimony that on January 23, 1978, at about 9:00 P.M., while the arresting officer and two others, all in plainclothes, were sitting in a police vehicle disguised as a yellow cab, they observed defendant on Grand Concourse near Marcy Place. At first, defendant was walking with two others. Defendant was carrying a large plastic bag and crossed the Grand Concourse alone. His two associates, one carrying a suitcase, continued to walk northbound on the other side of the Concourse. Defendant, continually looking over his shoulder, turned into 170th Street, followed by the officers in their cab. As defendant, still casting glances toward the rear, passed a liquor store, the cab pulled to the curb, at which time defendant turned back and entered the store. The officer watched defendant through the glass doors of the store and observed defendant put the bag on the counter and start to leave. At that moment the officer entered the store to talk to defendant. The officer identified himself as a police officer and asked defendant whether he knew whose bag was on the counter. Defendant said it was not his. The officer retorted that he had seen defendant carrying the bag on the street. Defendant thereupon admitted it was his and that it contained a television set. The officer opened the bag and in it found a television set. Defendant said he had obtained the set at 106 Marcy Place, Apartment 5C. According to the officer, defendant was asked whether he would return to the apartment with the officers and he responded, "Yeah, no problem." He accompanied the officers in the cab back to the premises. The officer went to the apartment, but no one was in and the door was locked. The officer returned to the cab and gave defendant the *Miranda* warnings. Defendant acknowledged he understood the warnings and then admitted that he had climbed down from the roof of the apart-

ment house by means of a rope, forced open the window to the apartment and entered to take the television set. The rope was still tied to the roof. It was recovered by the officers and defendant was placed under arrest. The owner of the liquor store testified she observed that defendant had been searched and handcuffed while he was still in the store. The officer remembered searching defendant but could not remember where the search took place. The initial questioning by the police officer in the liquor store, as the hearing court found, had an objective basis. The conduct of defendant while carrying the bag, in changing his path to the opposite side of the Grand Concourse, continually looking back over his shoulder, and then reverting to the liquor store at 170th Street when the officers pulled up to the curb in the cab, generated reasonable suspicion that something was wrong. Subsequently, when defendant left the bag on the counter and started to leave the store, and patently did not respond truthfully in denying the bag was his, reasonable suspicion rose to the level of probable cause. The existence of probable cause permitted the police to transport defendant to the address described by him. *(People v Brnja,* 50 NY2d 366.) It is not necessary to determine whether defendant voluntarily consented to accompany the officers back to the premises. We conclude that the television set and statement of defendant were lawfully obtained. Concur—Kupferman, Birns, Bloom and Lynch, JJ.; Murphy, P. J., concurs in a memorandum as follows: I concur under constraint of *People v Moore* (47 NY2d 911).