■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSE TIRADO, Respondent. — Order of the Supreme Court, New ·York County, entered November 21, 1979, which, upon the People's application, granted reargument of an order entered July 20, 1979, and, upon reargument, again suppressed physical evidence and defendant's postarrest statements, unanimously modified, on the law, to deny suppression of the physical evidence, and otherwise affirmed. The case is remanded to the Supreme Court for appropriate proceedings. At about 4:30 P.M. on January 30, 1979, three anticrime officers in civilian clothes, patrolling in an unmarked vehicle, observed defendant walking southbound on Avenue B near 10th Street, Manhattan, an area known to the police as a high burglary area. Defendant was carrying a television set in a brown shopping bag and pulling a wire mesh shopping cart that was partially covered by a sheet under which the officers saw a stereo. Defendant looked in the officers' direction, quickened his pace, walked diagonally across Avenue B towards East 9th Street, and unsuccessfully attempted to engage a woman in conversation. After following defendant a short distance in their car, the officers stopped to investigate. One officer approached defendant, identified himself as a patrolman and stated he wanted to ask a few questions. Defendant stopped (cf. *People v Howard,* 50 NY2d 583, 586). The officer's two partners were close by. None of the officers had his weapon drawn. Defendant, claiming the items belonged to him, was unable to state the brand name of the television set or stereo. When asked what caused a crack in the front of the set (there was no crack but defendant did not know this) defendant replied that he had dropped the set. He said he lived in another borough and was going crosstown to a relative's house. The officers noted that the knuckles and fingers of defendant's right hand were bleeding from several fresh scrapes and cuts and that his hands bore rust-brown dirt, the same kind as the officers had encountered when they had occasion to climb fire escapes. The police saw the name "Midge Thomas" on the stereo. When defendant gave his name as Jose Tirado, the officers placed defendant under arrest. Upon receiving the *Miranda* warnings at the station house, defendant remained silent. While vouchering the property they had seized, the officers discussed the fact that defendant had told them he did not know the brand name of the television set or the stereo. Defendant, in the same room, overhearing the officers' conversation, volunteered that the items were not his and that he had received them from a friend. One of the officers thereupon asked defendant for his friend's name. Defendant replied he did not know the name and just knew his friend by sight. The initial stop was lawful. When the police, patrolling in a high crime area saw defendant carrying a television set in a shopping bag and dragging behind him a shopping cart containing a partially covered stereo and observed that defendant grew nervous and tried to divert their attention from him, the officers quite properly were justified in approaching defendant to make inquiry *(People v Moore,* 62 AD2d 155, revd 47 NY2d 911; *People v De Bour,* 40 NY2d 210, 213, 217, 223). We find, too, that the facts elicited upon the stop ripened into probable cause *(People v Moore, supra).* The evidence justified the view that "a man of reasonable caution" would believe that a crime was being or had been committed (see *Carroll v United States,* 267 US 132, 162; *People v Oden,* 36 NY2d 382, 384; *People v Wharton,* 46 NY2d 924; CPL 70.10, subd 2). Defendant's hands bore telltale signs that he had used them to effect a forced entry. One hand was bleeding and bore what police characterized as fire escape rust. Defendant was unfamiliar with the equipment. He could not identify it, and he blindly offered an excuse for nonexistent damage. Further, defendant's explanation of his conduct was not reasonable. Although he said he lived in another borough, he explained that he was taking the items from an unidenti-

fied location across town to a relative's house. Moreover, it appeared defendant falsely claimed the property was his. While at the time the police lacked independent knowledge that the property was stolen or that a burglary had been committed, the officers' own observations and the information they had obtained from defendant warrants the conclusion that they had probable cause to arrest him. Notwithstanding the legality of defendant's arrest, his postarrest statements must be suppressed as illegally obtained. Although not in response to a question, defendant's statement that the items seized were not his and that he had obtained them from a friend was in effect the product of custodial "interrogation". (Cf. *Rhode Is. v Innis,* 446 US 291, 301.) The officers "should have known" that their colloquy within earshot of defendant was "reasonably likely" to precipitate some comment from him about those items. *(Innis, supra,* p 301; *People v Benitez,* 76 AD2d 196.) Defendant's follow-up statement, in response to a question by one of the officers, that defendant did not know the friend's name and just knew him by sight, was the product of express interrogation *(Innis, supra,* p 301). The officer had no right to ask defendant to clarify defendant's initial remark without first establishing that defendant had changed his mind and wished to discuss the case. There is no such evidence in the record. The People have not met the heavy burden placed upon them to show that defendant waived his Fifth Amendment right to remain silent *(Miranda v Arizona,* 384 US 436, together with *Westover v United States,* 384 US 436, 494, 496; cf. *Michigan v Mosley,* 423 US 96, 103-104; see, also, *People v Benitez, supra).* Concur — Birns, J.P., Sandler, Sullivan, Markewich and Silverman, JJ.