■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD McNALLY, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Dubin, J.), rendered March 4, 1981, convicting him of attempted burglary in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Brennan, J.), of defendant's motion to suppress a certain statement and physical evidence seized by the police. Judgment reversed, on the law, motion to suppress statement and physical evidence granted, and indictment dismissed. This case is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. On May 24, 1980, at about 10:40 P.M., two New York City police officers received a radio call to investigate two suspicious men with possible stolen property in a school parking lot in Queens. Upon arriving at the lot, the officers met a school custodian who informed the officers that two men had recently been in the lot asking for plastic bags. After the men were given two plastic bags by the custodian, they placed a television set, stereo and other property into the bags and headed westbound on Union Turnpike. The police, accompanied by the custodian, traveled in that direction and a few blocks later the custodian spotted the two men. The officers got out of the car and the men — defendant and his

companion — put down the plastic bags they had been carrying. One of the officers asked defendant what was in the bags, but before a response was given, the officer opened the top of the bags, looked inside, and saw a television set and stereo. The defendant stated that he was helping his aunt move and that she lived in Queens Village, although he did not know the exact address. The officers then asked defendant if he would accompany them to the aunt's house to verify his story. Defendant first replied that he was waiting for a bus, but then agreed and got into the car along with his companion. The plastic bags were placed in the trunk of the police car. While traveling to the location given by defendant, the officers received another radio call concerning a burglary that had taken place about one-half block from the school parking lot. The police drove to that address and, thereafter, the owners of the house described a burglary which resulted in the theft of their stereo and television. After the police displayed the merchandise contained in the plastic bags, the owners identified it as the stolen property. At that point, defendant and his companion were arrested. Subsequently, one of the officers noticed a bulge in defendant's pocket and removed some jewelry which had also been stolen from the same house. Criminal Term denied defendant's motion to suppress his statement about helping his aunt to move, as well as the property seized by the police. The court found that prior to the search of the bags the officers had a reasonable suspicion that criminal activity was afoot and that the intrusion was minimal. The court further held that defendant's statement was not the subject of a custodial interrogation. Defendant later pleaded guilty to attempted burglary in the third degree. We agree with Criminal Term that defendant's suspicious conduct, carrying a television set and stereo in plastic bags at night, warranted a reasonable suspicion that he had committed or was committing a crime (see CPL 140.50, subd 1; *People v Moore,* 47 NY2d 911, revg 62 AD2d 155, on dissenting opn at 62 AD2d 155, 157-160; *People v Hernandez,* 77 AD2d 548). The officers were permitted to forcibly detain the defendant, demand explanatory information, and, if necessary for their safety, conduct a limited frisk for weapons (see *Terry v Ohio,* 392 US 1; *People v De Bour,* 40 NY2d 210; *People v Finlayson,* 76 AD2d 670; *People v Earley,* 76 AD2d 335). Without probable cause to arrest, however, the officers were not justified in effecting an immediate search of the bags because this action went beyond any possible self-protection measure (see *People v Tucker,* 44 NY2d 941, revg 58 AD2d 673, on dissenting mem at 58 AD2d 673, 674; *People v Earley, supra,* p 342). Under these circumstances, the police did not have probable cause to arrest prior to the search. Incriminating circumstances which can elevate suspicion of stolen property to probable cause, such as a defendant's attempt to disassociate himself from the property (see, e.g., *People v Hernandez, supra*), or the giving of false or implausible explanations concerning the property (see, e.g., *People v Moore, supra; People v Rosemond,* 26 NY2d 101; *United States ex rel. Alexander v Fay,* 237 F Supp 142), were not present in this case (see, also, 1 La Fave, Search and Seizure, § 3.6). Here, the officers obtained no additional information upon observing defendant prior to the search, except as to verify the custodian's story. Contrary to our dissenting colleagues' conclusion that the defendant had no right to challenge the police search, apparently on the ground that defendant had not identified the specific items which were found in the bag carried by him, we find that the defendant possessed the requisite standing. On this record, it is clear that stolen property was found in both bags, so that it makes little difference what precise items were in each bag. In addition, it is obvious that the People have necessarily accepted the existence of standing since they did not raise such an issue either at the suppression hearing or on the appeal. The nature of the container, an opaque plastic bag,

does not diminish defendant's privacy interests, since the Fourth Amendment forecloses such a distinction (see *United States v Ross,* 456 US 798, __, 50 USLW 4580, 4587). Under these circumstances, defendant has adequately demonstrated a reasonable expectation of privacy in the containers where the goods were seized (see *United States v Salvucci,* 448 US 83; *People v Ponder,* 54 NY2d 160). Accordingly, the property contained in the plastic bags must be suppressed as obtained in violation of the Fourth Amendment. In addition, the jewelry found in defendant's pocket and his statement to the police must also be suppressed as the tainted fruits of the unlawful search (see *Wong Sun v United States,* 371 US 471; *Brown v Illinois,* 422 US 590). Damiani, J. P., Titone and Lazer, JJ., concur.

Mangano, J., dissents and votes to affirm the judgment, with the following memorandum, in which Brown, J., concurs: Defendant could only have challenged the validity of the warrantless search of the plastic trash bags if he had been able to demonstrate that he personally held a reasonable expectation of privacy in those bags. (See *People v Ponder,* 54 NY2d 160, 166; see, also, *United States v Salvucci,* 448 US 83; *Rawlings v Kentucky,* 448 US 98; *Rakas v Illinois,* 439 US 128; *People v David L.,* 56 NY2d 698, revg 81 AD2d 893, on the dissenting mem at 81 AD2d 893, 895-896.) At the suppression hearing in this case, the only witness to testify was the arresting officer, who was produced by the People. It is important to review carefully the officer's testimony regarding his initial street encounter with the defendant and his companion, and the officer's search of the plastic trash bags during that encounter. On direct examination, the police officer testified that when he first approached defendant and his companion, "[t]hey put them [the trash bags] down in front of them". The officer then stated that he "looked in the bag and in the bag was a stereo and TV — in the bags." On cross-examination, the police officer again testified that when he first approached defendant and his companion "they stopped and put the bags down." When asked if he recalled what was in the bag in front of the defendant, he answered that he could not recall. On this record, it would appear that the only evidence adduced to support defendant's challenge to the police search of the trash bags merely showed that defendant *and* his companion were carrying *bags* containing a television and stereo, and that these *bags* were searched. There is absolutely no evidence showing which bag was in defendant's possession, or in any way belonged to him, or, conversely, which was his companion's. At best, therefore, defendant's challenge to the search of the trash bags is simply a general attack on the police conduct involved, and, by force of logic and circumstance, includes an impermissible claim based on an alleged violation of his companion's Fourth Amendment rights, as well as an insufficient claim based on a purported violation of his own rights. As to the former, defendant, by attacking the search of the *bags,* was, in part, complaining about the search of the bag apparently in the possession of his companion — an obvious assertion of the Fourth Amendment rights of a third party for which defendant could not stand as the proponent. (See *Rakas v Illinois,* 439 US 128, 140, *supra; Alderman v United States,* 394 US 165, 174.) As to the latter, there having been absolutely no indication on this record as to which of the two bags was held by defendant, there was, consequently, a total absence of any evidence identifying the item whose search he could challenge. Thus, not even having identified that item, defendant could hardly be said to have proven a legitimate expectation of privacy therein, the violation of which is the only basis for a Fourth Amendment suppression claim. (See *Katz v United States,* 389 US 347; see, also, *Rakas v Illinois, supra,* p 143; *People v Ponder,* 54 NY2d 160, 166, *supra.*) Moreover, defendant cannot successfully argue, as the majority would suggest, that the

People have conceded the existence of standing by failure to argue lack of standing as a specific defense either at the suppression hearing or on the appeal. In *Rakas v Illinois* (*supra*), the United States Supreme Court specifically rejected the terminology and separate concept of standing and instead focused on whether defendant, as the proponent of a motion to suppress, can establish, as part of his case, that his own Fourth Amendment rights have been infringed. Specifically, the court in *Rakas* stated (*supra,* pp 133, 139, 140): "For we are not at all sure that the determination of a motion to suppress is materially aided by labeling the inquiry * * * as one of standing, rather than simply recognizing it as one involving the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge. We shall therefore consider * * * the. necessity for continued adherence to the notion of standing * * * as a concept that is theoretically distinct from the merits of a defendant's Fourth Amendment claim * * * [T]he type of standing requirement * * * reaffirmed today is more properly subsumed under substantive Fourth Amendment doctrine * * * [W]e think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing * * * [T]his Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and we think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing * * * Analyzed in these terms, the question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect * * * [B]y frankly recognizing that this aspect of the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing, we think the decision of this issue will rest on sounder 'logical footing." Therefore, I conclude that defendant has not properly or sufficiently challenged the search of the plastic trash bags that took place during the initial street encounter with the police. Thus, any illegality with regard to that search, if illegality there was, not having been proven by defendant, cannot serve as a basis for a finding that the subsequent seizure of physical evidence and the eliciting of a statement from defendant were rendered unlawful, as having resulted directly from the initial search of the trash bags. (Cf. *Brown v Illinois,* 422 US 590; *Wong Sun v United States,* 371 US 471.) Moreover, I otherwise find no illegality in the ultimate police seizure of the physical evidence in this case and in the taking of defendant's statement concerning the purported assistance he was rendering his aunt in moving. The latter consisted of a single question propounded to the defendant by the officer during a lawful stop pursuant to CPL 140.50 (subd 1) and did not constitute a process of custodial interrogation for which *Miranda* warnings are required. (See *People v Huffman,* 41 NY2d 29, 34.) The former, i.e., the seizure of the contents of the plastic bags and that of the jewelry from defendant's pocket, were incident to a lawful arrest. That arrest actually occurred when defendant, who had consented to go with the police in the patrol car to his aunt's house, was involuntarily transported to the scene of the crime upon the arresting officer's receipt of a radio run reporting a burglary in the vicinity in which defendant and his companion's suspicious conduct had been first observed by the school custodian. (See *People v Brnja,* 50 NY2d 366.) At that

point, i.e., upon receipt of the radio run, the arresting officer, with the totality of information then at his disposal, was invested with sufficient objective evidence to warrant a man of reasonable caution to believe that defendant and his companion had been the perpetrators of the reported burglary. (See *People v Brnja, supra; People v Grant,* 83 AD2d 277; *People v Mitchell,* 75 AD2d 626.) Thus, the seizure of the physical evidence subsequent to the time when defendant and his companion were taken into custody upon probable cause was legal, as being incident to a lawful arrest. Accordingly, I dissent and vote to affirm the judgment of conviction, concluding, as I do, that Criminal Term properly denied defendant's motion pursuant to CPL article 710 to suppress evidence.