■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ENRIQUE MORERA, Appellant. — Judgment, Supreme Court, New York County (Richard Wallach, J., at trial and sentence; Norman Fitzer, J., at suppression hearing), rendered on April 19, 1978, reversed, on the law and the facts, and the matter remanded for another suppression hearing and a new trial. Concur — Bloom and Alexander, JJ., Carro and Asch, JJ., concur, each in a separate memorandum, and Kupferman, J. P., dissents in a memorandum, as follows:

Carro, J. (concurring). Quite a number of facets of this case trouble us, including the propriety of the street arrest prior to execution of the search warrant for the house. (Cf. *People v Green,* 33 NY2d 496.) But even assuming the correctness of the arrest, certain statements allegedly made by defendant and his (codefendant) wife should have been suppressed. And overriding all is the question of whether defendant received a fair trial. We are convinced that he did not. Appellant was walking his dog, and his wife stood on the walkway with their son when the police pulled up to their house. As soon as it was verified that the house was theirs, the couple was arrested and led inside. Neither appellant nor his wife is English speaking and *Miranda* warnings were given in Spanish. At the same time two other officers broke into the back of the house and discovered various caches of different drugs and paraphernalia. Appellant, handcuffed, was brought downstairs and confronted with foil packets of cocaine. Asked "What do you call this?", he began to cry. This methodology, of search and confront, search and confront, was continued for three hours. During this time massive amounts of drugs, cash and four firearms were discovered, the last because the police threatened to tear apart the house if defendant did not disclose whether or not guns were present. The whole atmosphere was one of charged emotion and intimidation, as appellant was led handcuffed in front of his wife and son. The police were surely aware that their actions were coercive and likely to elicit incriminating statements. (*Rhode Island v Innis,* 446 US 291, 301; *People v Maerling,* 46 NY2d 289, 302-303.) Defendant's motion to suppress the statements was denied, the court finding that in the totality of the circumstances he had made an intelligent, knowing and voluntary waiver. Such a conclusion is simply not supported by the facts testified to by the police. The People have a heavy burden in demonstrating that a defendant has waived his constitutional rights, and they must show that the waiver was knowingly, intelligently and voluntarily made. (*People v Huntley,* 15 NY2d 72; *People v Yarter,* 41 NY2d 830.) Even in looking at the totality of circumstances (*People v Anderson,* 42 NY2d 35, 38), defendant's statements cannot be accepted as spontaneous because they were "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant". (*People v Lynes,* 49 NY2d 286, 295; see, also, *People v Maerling,* 46 NY2d 289, 302-303, *supra.*) Here we have a defendant who hardly spoke English, who needed an interpreter, handcuffed (as was his wife) with his son present, while several armed officers ransacked his home. He was interrogated during a three-hour search of the house, and as stated earlier, was brought to tears. Coupled with this highly emotional situation for him and his family is the fact that in being read his *Miranda* rights in Spanish, and being told that he had a right to have an attorney

present, the defendant remained silent. The People would establish a waiver by implication, but this can be done only where "defendant's silence [is] coupled with an understanding of his rights and a course of conduct indicating waiver". (*North Carolina v Butler,* 441 US 369, 373.) "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." (*Miranda v Arizona,* 384 US 436, 475; *People v Schroder,* 71 AD2d 907; compare *People v Baez,* 79 AD2d 608, 609 [Spanish-speaking defendant affirmatively showed that he understood *Miranda* warnings and in fact later asked for an attorney].) Accordingly, the statements taken from him at his house, as clearly the product of inquisitorial, custodial interrogation, should have been suppressed. (See, e.g., *People v Tirado,* 79 AD2d 907, 908.) Moreover, it was all entirely unnecessary. Assuming, as we must, the validity of the search warrant and the extraordinary amount of contraband legally seized (over *four* pounds of cocaine, alone), why the excessive confrontation and questioning? Secondly, defendant was tried jointly with his wife and both were represented by the same attorney. The People acknowledge that both on January 3, 1978 before Justice Fitzer, and again the following day in Trial Part before Justice Wallach, defense counsel informed the court that a conflict of interest existed with his representation of both defendants. Justice Wallach "provisionally" denied counsel's motion to be relieved from representing Mrs. Morera, promising to resolve the issue a bit later. He did not. Moreover, the court had been informed that defense counsel had been retained by an unnamed, outside third party. The failure of either Justice to inquire further thereby deprived defendant of his right to a fair trial. The United States Supreme Court has made it clear that when no pretrial objection has been made, the mere assertion on appeal that a conflict might exist is insufficient to impugn the integrity of a criminal conviction. (*Cuyler v Sullivan,* 446 US 335.) However, when counsel does inform the court, as here, the trial court's failure to either take adequate steps to ascertain whether the risk of a conflict is too remote to warrant separate counsel, or to go ahead and appoint another attorney, denies the defendants their constitutional right to the effective assistance of counsel, in derogation of the Sixth and Fourteenth Amendments. (*Holloway v Arkansas,* 435 US 475, 484 [per Burger, Ch. J.].) Assistance of counsel is so fundamental to a fair trial that prejudice is presumed, and the error can never be deemed "harmless" because it may be impossible to identify what counsel was compelled to *refrain* from doing. (*Holloway v Arkansas,* 435 US, at pp 489-490.) Even more is this so where an outside unknown, with quite possibly conflicting interests, has retained the attorney. (Cf. *Wood v Georgia,* 450 US 261.) New York law is even stricter. As soon as it is apparent that one lawyer represents more than one defendant, the court is required to "ascertain, on the record, whether each defendant has an awareness of the potential risks involved in that course [multiple representation] and has knowingly chosen it." (*People v Gomberg,* 38 NY2d 307, 313-314 [per Jasen, J.].) Even a statement by the attorney that he has informed the defendants of the pitfalls and gotten their consent does not alone relieve the trial court's obligation to prove the defendants' awareness of the risks. (*People v Baffi,* 49 NY2d 820.) The Court of Appeals has repeatedly held that a defendant need not show prejudice on appeal, but only the significant possibility that a conflict of interest existed. (*People v Burwell,* 53 NY2d 849; *People v Crump,* 53 NY2d 824; *People v Macerola,* 47 NY2d 257.) Defendant has certainly met this burden. Not only did joint representation bind this couple together in the eyes of the jury in considering whether they "acted in concert", but separate counsel would surely have tried to isolate possession by one but not the other. For instance, one

statement admitted was Mrs. Morera's alleged remark that the "vegetable" matter on the table "was only grass." Defendant's counsel might well have argued, were he also not bound to attend her, that Mr. Morera's telling the police that his wife "has nothing to do with it," was a husband's natural attempt to shield his family, but in fact, not at all the reality. Lastly, we express our concern at the apparent overzealousness of not just the police, but the District Attorney's office. Given the massive quantity of drugs and cash found, why did the prosecutor feel compelled to "gild the lily" by introducing as evidence four weapons when the indictment only mentioned two, questioning extensively about an incident unrelated to the charges and repeatedly making inflammatory remarks during summation of evidence that spoke quite well for itself? While our adversary system creates a conflict between the role of People's advocate and conscientious truth seeker, we see no reason for the surfeit of abuses in a prosecution such as this.

Asch, J. (concurring). I am concurring because I feel there are serious questions which must be raised with respect to the search of the premises and the person of the defendant, as well as his *Miranda* rights. However, I do not feel that these problems would mandate a reversal except when viewed together with what I regard to be the improper joint representation of defendant and his wife by the same attorney. The trial court on the record before us did not "ascertain * * * whether each defendant [had] an awareness of the potential risks involved in that course [joint representation] and [had] knowingly chosen it" (*People v Gomberg*, 38 NY2d 307, 313-314). If there had been such an inquiry by the trial court, it is possible that the defendant could have demonstrated the existence of a significant possibility of conflict of interest (*People v Macerola*, 47 NY2d 257, 264). It seems significant that the issue was raised by counsel before the selection of the jury and the court chose not to pursue the matter.

Kupferman, J. P. (dissenting). This matter illustrates the mischief that can be caused by the rote application of sound rules to situations where they do not really apply. If I were caught with an arsenal and over four pounds of cocaine, I would probably cry also. The fact that the court had been informed "that defense counsel had been retained by an unnamed, outside third party", shows the kind of case that it is.