■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD WAYNE TRIPOLI, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Suffolk County (Jaspan, J.), rendered December 29, 1982, convicting him of attempted criminal possession of stolen property in the first degree, upon a jury verdict, and imposing sentence. ¶ Judgment affirmed. No opinion. Mollen, P. J., O'Connor and Niehoff, JJ., concur.

Titone, J., concurs and votes to affirm the judgment, with the following memorandum: The core issue is whether a warrantless seizure of simulated stolen property from a camper trespassed upon the defendant's constitutional rights (US Const, 4th Amdt; NY Const, art I, § 12). Because the *sui generis* nature of a camper has spawned arguably conflicting decisions on the questions (cf. *People v Carney,* 34 Cal 3d 597 [majority opn, and dissenting opn Richardson, J.], cert granted __ US __; *United States v Wiga,* 662 F2d 1325; *United States v Williams,* 630 F2d 1322; *State v Lepley,* __ Minn __, 343 NW2d 41), I cannot join in the silent affirmance and, therefore, set forth my own reasons for finding the police conduct proper. ¶ The basic facts are not disputed. On July 27, 1982, Police Officer Michael Calvin, posing as a thief who desired to sell defendant certain jewelry which was said to have been stolen, went to defendant's auto body shop in connection with an undercover operation that had targeted the defendant. Calvin found the defendant working on a camper belonging to a customer and the two went into the camper's living quarters where Calvin showed defendant 29 pieces of jewelry. ¶ In substance, Calvin told the defendant that the jewelry was made of gold, that he had gotten it "out of a house out east" and that he was having difficulty selling it because all potential buyers wanted to see an "I.D." Defendant purchased the jewelry for $125 and placed it in a refrigerator in the camper. ¶ The two thereupon left the camper and, after they were 10 to 20 feet away from it, Calvin then transferred defendant into the custody of other officers, returned

to the camper and retrieved the jewelry from the refrigerator. ¶ The branch of defendant's motion seeking to suppress the jewelry was denied, after a hearing before Justice Jaspan. I agree that an affirmance is in order. ¶ At the outset, it should be noted that, on the record before us, defendant has standing to challenge the warrantless seizure. The camper was parked on his premises and the owner appears to have relinquished control. The defendant and the officer expressly entered the camper to shield their transaction from public view. Plainly, defendant had a "reasonable expectation of privacy" in the premises searched and, therefore, has standing to complain of the warrantless seizure (see *People v Lewis,* 94 AD2d 44, 50-51; *People v McNally,* 89 AD2d 971, app dsmd 58 NY2d 1029; cf. *People v Ponder,* 54 NY2d 160, 166). ¶ On the substantive point, there can be no dispute that Officer Calvin's initial entry into the camper was lawful, based, as it was, on defendant's invitation (see *People v Clements,* 37 NY2d 675, 677, 685, n 5, cert den *sub nom. Metzger v New York,* 425 US 911). Focus must, therefore, be directed only to the re-entry and seizure, which must be viewed from the perspective of the police in the circumstances with which they were confronted (see *People v Jackson,* 41 NY2d 146, 149; *People v Gehrman,* 56 AD2d 579, 580, cert den 434 US 850). ¶ Having taken the defendant into custody, the officers obviously had to take some action to prevent the removal of the jewelry. Two alternatives were open. They could have seized the evidence as they did, or they could have posted a guard while they obtained a warrant. It would have been unacceptable to have taken no action at the scene until the warrant had been obtained. ¶ As a practical matter, maintaining a surveillance would have been wholly inadequate. The camper was not a fixed residence and, therefore, the officers were faced with the possibility that the owner or his agent would appear and demand that the vehicle be returned. As the Ninth Circuit has observed, "[w]hile a motor home may afford its occupants a higher expectation of privacy than does an ordinary passenger automobile, it also raises the possibility of certain exigencies which are not present in the case of the ordinary automobile stop" (*United States v Wiga,* 662 F2d 1325, 1329, *supra;* cf. *State v Lepley, supra*). ¶ Confronted with the necessity to take some police action without delay, it cannot be said that the course undertaken was impermissible. There is ample evidence to support a finding of exigency. More important, the intrusion was minimal. The officers did not engage in a rummaging or general search but rather focused on a "'predetermined target'" (*People v Vaccaro,* 39 NY2d 468, 473; *People v Clements,* 37 NY2d 675, 679, *supra;* cf. *People v Knapp,* 52 NY2d 689). ¶ In addition, Officer Calvin plainly had probable cause to place defendant under arrest after the transaction and could have immediately seized the evidence that he himself had provided. The mere fact that he waited until the backup unit arrived to retrieve the evidence certainly should not nullify his right to do so (cf. *People v Brosnan,* 32 NY2d 254, 257). Put another way, the seizure was not "come at by exploitation of * * * illegal police activity" (*People v Arnau,* 58 NY2d 27, 37). ¶ In sum, from whatever perspective viewed, the police action did not constitute an "unreasonable" search or seizure within the meaning of the constitutional prohibitions. Finding that the other issues raised by the defendant are without merit and do not warrant discussion, I cast my vote for affirmance.