■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LARRY McCOWEN, Respondent.—Order of the Supreme Court, New York County (Richard C. Failla, J.), entered on or about May 26, 1988, which granted defendant's motion to suppress

physical evidence, statements and identification testimony, is unanimously modified on the law to the extent of denying the motion to suppress as to the physical evidence and the identification testimony, and otherwise affirmed.

Order of the Supreme Court, New York County (Robert Haft, J.), entered on July 12, 1989, dismissing the indictment against defendant, is unanimously reversed on the law and the indictment reinstated.

Defendant was indicted on September 29, 1987 for robbery in the second degree. He thereafter moved to suppress two gold chains recovered from him, his statements to the police and testimony concerning a lineup identification. In that regard, a combined *Mapp* and *Wade* suppression hearing was conducted, at the conclusion of which the court granted defendant's motion in full. We disagree as to the suppression of the physical evidence and the lineup identification by the complainant.

The proof presented at the hearing reveals the following: On September 17, 1987, at approximately 6:00 P.M., Delores Moebus, then 60 years of age and carrying two bags of groceries, was returning to her apartment building at West 43rd Street between 8th and 9th Avenues when she was grabbed around the throat and relieved of two gold chains and a ring. In the meantime, Police Officers Clifton Hollingsworth and Joel Francis were on plain-clothes foot patrol in the vicinity, unaware that a robbery had just occurred nearby. Officer Hollingsworth, who was standing by a subway entrance while his partner was getting some coffee, observed defendant running along 43rd Street toward 8th Avenue, two gold chains in his hand. Defendant raced down a flight of stairs at the subway entrance but immediately turned around and returned to ground level, running in the direction of 8th Avenue.

Officer Hollingsworth called to Officer Francis, and both men noticed defendant cross the street with the chains still in his hand. Defendant was described as dodging vehicles in a "rather hazardous way" and "looking back" over his shoulder. The officers followed defendant. He deposited the chains into a pants pocket and headed toward another subway entrance, still glancing over his shoulder. As the officers watched, defendant descended some four steps and then peered out between the bars of the subway railing. The two policemen approached defendant, displayed their police shields and inquired about the gold chains. Defendant denied possessing any gold chains, claiming that the officers must be mistaken. He was again

asked if he had gold chains on him, and defendant once more responded that he did not. Officer Hollingsworth thereupon tapped the pocket where he had just seen defendant put the chains, stating, "What are those?" Defendant replied that "these are my chains" and thrust his hand into his pocket. Both officers grabbed defendant's arm, supposedly for safety purposes, and held on to him as he withdrew his hand. The chains dropped to the ground while defendant was removing his hand from the pocket; he was prevented from picking them up by Officer Francis, who held him back by the arm. Officer Hollingsworth retrieved the chains, and, cupping them in his hands, he requested that defendant describe them. After defendant was unable to do more than to characterize the two chains and attached pendants as "a square piece" and "a squiggly line", he was arrested, given *Miranda* warnings and removed to the local precinct.

At the station house, Officer Hollingsworth encountered Delores Moebus. She accurately described the jewelry recovered from defendant and later positively identified the items as belonging to her. She also provided a description of the man who had choked and robbed her. The police arranged a seated lineup, which included defendant and five others, and Moebus easily pointed to defendant as the perpetrator. Although the court credited this account of the incident, as related by Officers Hollingsworth and Francis, and determined that they were entirely justified in stopping defendant and making further inquiry, concluding that defendant's false denials appropriately increased the officer's well-founded suspicion, the court ruled that when the chains fell to the ground, and the officers restrained defendant from picking them up, the stop became a full-scale seizure requiring probable cause, an element deemed to be lacking. The court further granted suppression of defendant's statements with respect to his inability to describe the chains, as well as the lineup identification by the complainant, because they were tainted by the unlawful seizure.

However, defendant's conduct in running through a high-crime area, dangling two gold chains in his hand, dodging traffic while racing down the street and looking over his shoulder as if he were being chased, as well as entering and exiting a subway stairwell in an apparent effort to conceal himself, and lying to the police about having the jewelry was certainly sufficient to provide probable cause that, at the very least, he was in possession of stolen property *(see, People v Moore,* 47 NY2d 911, *revg on dissent of Silverman, J.,* 62 AD2d

155; *People v Tirado,* 79 AD2d 907; *People v Hernandez,* 77 AD2d 548). Defendant's acts were simply not susceptible of innocent interpretation. Thus, "[w]hile at the time the police lacked independent knowledge that the property was stolen or that a burglary had been committed, the officers' own observations and the information they had obtained from defendant warrants the conclusion that they had probable cause to arrest him" *(People v Tirado, supra,* at 908). Defendant's untruthful answers to the officers upon being questioned as to whether he had any gold chains on him provided the predicate for reasonable suspicion to ripen into probable cause *(see, People v Wharton,* 46 NY2d 924). Since the police clearly possessed probable cause to arrest defendant when he lied about the chains, they could properly have seized the items as incident to a lawful arrest. The court, although correctly noting that the officers were warranted, for safety reasons, to hold onto defendant's arms as he emptied his pockets, was in error in finding that probable cause was absent for the police to prevent defendant from reaching for the fallen chains and retrieving those items themselves. In view of the existence of probable cause to arrest defendant prior to his being asked to describe the jewelry, further interrogation of defendant should have been preceded by *Miranda* warnings. Consequently, defendant is entitled to the suppression of his failed attempt to adequately describe the chains. The lineup identification, however, is admissible because the officers possessed an independent basis for keeping defendant in custody, and defendant's inability to describe the chains in no way affected the lineup *(see, People v Rogers,* 52 NY2d 527). Concur—Kupferman, J. P., Milonas, Kassal, Wallach and Rubin, JJ.