■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RICHARD GIBSON and LEROY HAYES, Respondents. [598 NYS2d 794] —Appeal by the People from an order of the County Court, Nassau County (Winick, J.), dated March 17, 1992, which granted those branches of the defendants' omnibus motions

which were to suppress physical evidence and their statements to law enforcement authorities.

Ordered that the order is reversed, on the law and the facts, those branches of the defendants' omnibus motions which were to suppress physical evidence and their statements to law enforcement authorities are denied, and the matter is remitted to the County Court, Nassau County, for further proceedings consistent herewith.

On October 12, 1990, at approximately 1:30 P.M., Hempstead Police Officer Donald Simone was patrolling in the vicinity of the Mulford Place apartment complex in Hempstead when he observed two men and a woman walking together towards the apartment complex. Officer Simone was aware at the time that between 13 and 15 burglaries had been reported within a one block radius of the complex over the preceding seven-month period. At that point, Officer Simone received a radio report which required him to leave the area, but some 40 minutes later he received a radio report of a "suspicious person" in Mulford Place and returned to the apartment complex.

As Officer Simone approached the apartment complex, he again noticed the same three people he had seen earlier, although this time they were walking away from the apartment complex and each was carrying "at least two shopping bags". When Officer Simone reached the complex, an unidentified man approached him and informed him that the three "persons that just turned the corner" had not been carrying the shopping bags when they walked into the apartment complex. Officer Simone replied that they were the same people he had seen earlier. Officer Simone then decided to speak to the three persons, who had accelerated their pace when they noticed him approaching in his marked patrol car. Officer Simone pulled over, exited his vehicle, and asked the individuals where they were coming from, to which they replied, "Jamaica". Officer Simone's suspicions were aroused when he noticed a videocassette recorder and "assorted new clothing" protruding from one of the bags. Officer Simone also noticed that the shopping bags were from Woolworth's, Frankle's and Strawberry's, stores which he knew from his own knowledge were not located within a two-mile radius of the apartment complex.

Officer Simone then asked the three individuals where they had obtained the merchandise in the bags, and was informed that the items had been obtained in "Jamaica". Officer Si-

mone further inquired as to whether they had sales receipts for any of the merchandise and the defendants told him they did not. Since Officer Simone had observed the trio in Hempstead only 40 minutes earlier without the bags, he concluded that they were not answering truthfully in claiming that the goods had been purchased in Jamaica. As a consequence, Officer Simone asked for permission to inspect the bags, and the trio consented. Upon inspecting the contents of the bags, Officer Simone found clocks, radios, batteries and other assorted household items. Several other officers arrived at approximately this time, and the suspects were taken into custody. After receiving their *Miranda* warning, they admitted their participation in a burglary which had been committed that day at the apartment complex.

Upon the foregoing record, the County Court granted the defendants' motions to suppress. Applying the recent holding of the Court of Appeals in *People v Hollman* (79 NY2d 181), the County Court concluded, *inter alia,* that Officer Simone's request for permission to inspect the shopping bags was improper inasmuch as it was accusatory in nature within the meaning of *Hollman* and required proof of a "founded suspicion that criminal activity was afoot," which, in the court's view, had not been established under the circumstances presented. We disagree.

In *People v Hollman* (79 NY2d 181, 185, 191, *supra),* the Court of Appeals held, *inter alia,* that an officer's request for permission to search a bag is an "intrusive" type of inquiry which must, at a minimum, be supported by "a founded suspicion that criminal activity is afoot". The Court recognized, however, that "the tone of police-initiated encounters with civilians can be subtle and ever-shifting, that words and gestures are susceptible to many varying interpretations, and that suspicion can grow based on intangibles evident only to the eyes of a trained police officer" *(People v Hollman, supra,* at 191).

Here, there were a series of factors which escalated incrementally as the encounter evolved. The officer had observed the defendants walking without bags towards the apartment complex only a short period of time before again seeing them carrying shopping bags as they walked away from the complex. This, coupled with the officer's knowledge of the recent history of burglaries in the neighborhood, the radio call advising him of a suspicious person in the area, and the information he received from the man who approached him, supplied

him with the requisite basis to approach the defendants for information.

Upon approaching the defendants, the officer then noticed that the bags were not from stores within close proximity of the apartment complex and observed a videocassette recorder and assorted clothing sticking out of the bags. Significantly, when the officer asked the defendants where they were coming from and where they had obtained the merchandise in their bags, the defendants replied that they had come from, and obtained the property in "Jamaica", despite the fact that only 40 minutes earlier they had been walking in the area without the bags. Moreover, the veracity of this assertion, and of the further response that the defendants were coming from "Jamaica", was undermined by the statement of the man who met Officer Simone at the complex and confirmed that the defendants were coming from the complex—not Jamaica—and did not have the bags when they had first entered it. In light of the defendants' implausible responses *(cf., People v Diaz,* 131 AD2d 690, 694), and considering all the additional attendant factors recounted above, it is clear that Officer Simone possessed a "founded suspicion that criminal activity was afoot", justifying his request for permission to look into the shopping bags *(People v Hollman, supra,* at 193; *People v Smith,* 190 AD2d 832; *People v McCowen,* 159 AD2d 210; *People v Williamson,* 107 AD2d 727). Upon inspecting the bags and discovering that in addition to the videocassette recorder and clothing, they were filled with clocks, radios, batteries, and other assorted household items, the predicate of suspicion developed into probable cause to believe a crime had been committed *(People v McCowen, supra; People v Williamson, supra; see also, People Moore,* 47 NY2d 911). Thompson, J. P., Bracken, Balletta and Eiber, JJ., concur.