IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-257

 Filed: 19 April 2016

Wake County, No. 14 CVS 2703

PETER JERARD FARRELL, Petitioner,
 v.

United States Army Brigadier General, Retired, KELLY J. THOMAS, Commissioner
of NC Division of Motor Vehicles, in his official capacity, Respondent.

 Appeal by respondent from order entered 31 December 2014 by Judge G. Bryan

Collins in Wake County Superior Court. Heard in the Court of Appeals 10 September

2015.

 Attorney General Roy Cooper, by Assistant Attorney General Christopher W.
 Brooks, for respondent-appellant.

 The Farrell Law Group, P.C., by Richard W. Farrell, for petitioner-appellee.

 DIETZ, Judge.

 In 2013, a Raleigh police officer pulled over a car driven by Petitioner Peter

Farrell. When the officer approached Farrell, he noticed that Farrell’s eyes were

glassy and bloodshot and that his speech was slightly slurred. The officer returned

to his patrol car to wait for backup. When he returned to question Farrell further,

the officer noticed a strong odor of mouthwash that wasn’t there before, and a nearly

empty bottle of mouthwash on the floorboard. The officer asked Farrell if he had just
 FARRELL V. THOMAS

 Opinion of the Court

used mouthwash, and Farrell lied and said he had not. As the officer continued to

question Farrell, he admitted that he had used mouthwash.

 Farrell ultimately refused the officer’s request to take a breath test after being

informed of his implied consent rights and the consequences of refusing to comply.

Law enforcement then obtained a blood sample from Farrell, which revealed that

Farrell’s blood alcohol level was .18.

 Because Farrell refused to submit to a breath test upon request, the Division

of Motor Vehicles revoked Farrell’s driving privileges as required by our State’s

implied consent laws. Farrell challenged his license revocation and the DMV upheld

it following a hearing. Farrell appealed the DMV’s order to the Wake County

Superior Court. There, the court reversed on the ground that the DMV’s findings did

not support its conclusion that the officer had reasonable grounds to believe Farrell

was driving while impaired.

 We reverse. As explained in more detail below, the DMV’s findings readily

support its conclusion. Those findings establish that the arresting officer observed

Farrell with glassy, bloodshot eyes and slightly slurred speech; that, while the officer

had returned to his patrol car, Farrell used enough mouthwash to create a strong

odor detectable by the officer from outside the car; and that Farrell lied to the officer

about using the mouthwash. From these facts, a reasonable officer could conclude

that Farrell was impaired and had attempted to conceal the alcohol on his breath by

 -2-
 FARRELL V. THOMAS

 Opinion of the Court

using mouthwash and then lying about having done so. Thus, the DMV did not err

in concluding that, based on its uncontested findings of fact, the arresting officer had

reasonable grounds to believe Farrell was driving while impaired. Accordingly, we

reverse the superior court’s order.

 Facts and Procedural History

 Around 1:30 a.m. on 6 September 2013, Raleigh police received a call about a

car driving dangerously at a shopping center. Officer David Maucher traveled to the

scene and witnesses described the car as a silver four-door Audi sedan.

 As Officer Maucher searched the area in his patrol car, he spotted a silver Audi

matching the witnesses’ descriptions. Officer Maucher ran a check on the plate and

discovered that the car had an expired registration and was past its State-required

inspection date. Based on this information, Officer Maucher pulled the car over.

 Officer Maucher approached the car and found Farrell in the driver’s seat,

sitting on top of his seat belt, with glassy, bloodshot eyes and “slightly” slurred

speech. Farrell admitted that he had consumed multiple beers earlier in the night.

 Officer Maucher returned to his patrol car and requested backup. After other

officers arrived, Officer Maucher returned to Farrell’s car. As he approached the

driver’s side window, he smelled a strong odor of mouthwash that was not present

the first time he approached the vehicle. Officer Maucher also noticed a nearly empty

mouthwash bottle on the floorboard. Officer Maucher asked Farrell if he had just

 -3-
 FARRELL V. THOMAS

 Opinion of the Court

used mouthwash and Farrell said he had not. When Officer Maucher told Farrell

that he did not believe him, Farrell relented and said he used “a little” mouthwash.

 Officer Maucher then asked Farrell to step out of the vehicle to perform field

sobriety tests. Farrell refused to perform the sobriety tests, but indicated that he

would take a breath test. Officer Maucher then placed Farrell under arrest for

driving while impaired based on the officer’s conclusion that Farrell was “under the

influence of an impairing substance” and “appreciably impaired by alcohol.”

 At 2:29 a.m. in the Wake County Detention Center, Officer Maucher, a certified

chemical analyst, informed Farrell of his implied consent rights, both orally and in

writing in accordance with N.C. Gen. Stat. § 20-16.2(a), and explained to Farrell how

to submit a sample of his breath for chemical analysis. After speaking with his

brother by phone, Farrell told Officer Maucher that he would not take the breath test.

Officer Maucher officially marked Farrell’s refusal of chemical analysis at 3:04 a.m.

Following this refusal, police obtained a blood sample from Farrell. That test

revealed that Farrell had a blood alcohol concentration of .18.

 The State charged Farrell with driving while impaired but later dismissed the

criminal charges because the prosecutor believed that all evidence resulting from

Farrell’s stop and arrest would be suppressed under the exclusionary rule.

 On 10 October 2013, Farrell received an official notice of license suspension

from the DMV, effective 20 October 2013, based on his willful refusal to submit to

 -4-
 FARRELL V. THOMAS

 Opinion of the Court

chemical analysis under N.C. Gen. Stat. § 20-16.2. Upon receiving this notice, Farrell

requested a hearing before the DMV.

 On 19 February 2014, the DMV found adequate evidence to sustain the

revocation of Farrell’s driving privileges. Farrell appealed the administrative

hearing results to the Wake County Superior Court. On 21 December 2014, the

Superior Court reversed the DMV’s decision on the basis that the findings of fact did

not support the conclusion that Officer Maucher had reasonable grounds to believe

Farrell was driving while impaired. The DMV timely appealed.

 Analysis

 The DMV argues that the superior court erred in reversing its decision. We

agree.

 In an appeal from a DMV hearing to the superior court under N.C. Gen. Stat.

§ 20-16.2(e), the superior court acts as an “appellate court.” Johnson v. Robertson,

227 N.C. App. 281, 286, 742 S.E.2d 603, 607 (2013). It is not a trier of fact. Id. By

statute, the superior court’s review “shall be limited to whether there is sufficient

evidence in the record to support the Commissioner’s findings of fact and whether the

conclusions of law are supported by the findings of fact and whether the

Commissioner committed an error of law in revoking the license.” N.C. Gen. Stat.

§ 20-16.2(e).

 -5-
 FARRELL V. THOMAS

 Opinion of the Court

 Here, the superior court held there was “sufficient evidence in the record to

support the Findings of Fact” but that “Conclusion of Law of [sic] #2 . . . is not

supported by the Findings of Fact.” In Conclusion of Law #2, the DMV concluded

that “Officer Maucher had reasonable grounds to believe that [Farrell] had committed

an implied consent offense.” For the reasons explained below, we hold that

Conclusion of Law #2 is supported by the DMV’s findings.

 In a license revocation proceeding, “the term ‘reasonable grounds’ is treated

the same as ‘probable cause.’” Hartman v. Robertson, 208 N.C. App. 692, 695, 703

S.E.2d 811, 814 (2010). “[P]robable cause exists if the facts and circumstances at that

moment and within the arresting officer’s knowledge and of which the officer had

reasonably trustworthy information are such that a prudent man would believe that

the [suspect] had committed or was committing a crime.” Id.

 Thus, in reviewing the DMV’s conclusion, we must ask whether the findings of

fact establish that Officer Maucher had probable cause to believe Farrell was driving

while impaired.1 As explained below, the findings readily support that conclusion.

 The DMV found that, when Officer Maucher approached the car, Farrell’s “eyes

were glassy and bloodshot and his speech was slightly slurred.” The officer returned

to his patrol car and when he approached Farrell a second time, he “smelt [sic] a

 1 Farrell does not contend that any particular findings by the DMV are unsupported by the
record, nor does he challenge the superior court’s holding that there was “sufficient evidence in the
record” to support all findings.

 -6-
 FARRELL V. THOMAS

 Opinion of the Court

significant strong odor of mouthwash coming from” Farrell. Officer Maucher did not

smell this odor when he first approached Farrell’s car. Officer Maucher asked Farrell

“if he had just washed his mouth out with the mouthwash.” Farrell lied and said he

had not, then changed his story and admitted he had used “just a little bit” of

mouthwash.

 These findings are sufficient to establish probable cause. Farrell’s glassy,

bloodshot eyes and slurred speech alone created a strong suspicion that Farrell might

be impaired. Then, Farrell acted in an unusual and suspicious manner by using so

much mouthwash while the officer had returned to his patrol car that, when the

officer returned, there was “a significant strong odor of mouthwash” detectable from

outside Farrell’s car. Finally, and perhaps most significantly for the officer’s

determination of probable cause, Farrell lied to the officer and said he had not used

any mouthwash and then, under further questioning, admitted that he had.

 From this conduct, the officer had probable cause to believe that Farrell was

impaired and sought to hide any odor of alcohol on his breath by using mouthwash

and attempting to conceal that he had done so. See United States v. Wilson, 699 F.3d

235, 246 (2d Cir. 2012) (finding probable cause to search car for contraband where

defendant “lied about having crossed the border at a non-designated border crossing

point, and had then admitted to lying,” and also admitted to having “scored a little”

marijuana while in Canada); People v. McCowen, 159 A.D.2d 210, 213 (N.Y. App. Div.

 -7-
 FARRELL V. THOMAS

 Opinion of the Court

1990) (“Defendant’s untruthful answers to officers upon being questioned as to

whether he had any gold chains on him provided the predicate for reasonable

suspicion to ripen into probable cause.”). Accordingly, the DMV properly concluded

that Officer Maucher had reasonable grounds (i.e., probable cause) to believe Farrell

was driving while impaired.

 Farrell next argues that the State’s dismissal of his DWI charge is a “judicial

admission” that bars the DMV from pursuing a driver’s license revocation under the

implied consent laws. The record before the DMV did not disclose why the State

dismissed the DWI charge. On appeal, Farrell submitted a dismissal document from

the criminal case in which a handwritten entry, apparently made by the prosecuting

attorney, indicates that the State dismissed the DWI charge because all evidence

would be “suppressed due to a pre-arrest request violation.”

 Ordinarily, we do not consider material not submitted to the trial court, and

we cannot tell, from the record before us, whether Farrell raised this issue at the

DMV hearing despite not producing the dismissal document. In any event, even

assuming Farrell properly raised and preserved this issue below, it is meritless.

First, as the concurrence observes, no court in this State has ever held that the

decision of an assistant district attorney not to pursue criminal charges, made in the

exercise of prosecutorial discretion, is binding on other state agencies that can pursue

civil remedies for the same underlying conduct. Second, whatever evidence the

 -8-
 FARRELL V. THOMAS

 Opinion of the Court

prosecutor believed would be suppressed in the criminal case would not have been

suppressed at the DMV hearing. It is well-settled that, unlike in a criminal

proceeding, the exclusionary rule does not apply in a civil license revocation

proceeding like this one. See Combs v. Robertson, __ N.C. App. __, 767 S.E.2d 925,

928, appeal dismissed, review denied, __ N.C. __, 776 S.E.2d 194 (2015); Hartman,

208 N.C. App. at 695, 703 S.E.2d at 814; Quick v. N.C. Div. of Motor Vehicles, 125

N.C. App. 123, 127, 479 S.E.2d 226, 228 (1997).

 The dissent contends that the U.S. Supreme Court’s recent decision in Grady

v. North Carolina, 575 U.S. ___ (2015) (per curiam), which held that “the Fourth

Amendment’s protection extends beyond the sphere of criminal investigations,”

means that we should revisit our holding from Combs, Hartman, and Quick. This

confuses the Fourth Amendment’s protection (against unreasonable searches) with a

court-created remedy (the exclusionary rule). The Fourth Amendment itself “says

nothing about suppressing evidence” and the U.S. Supreme Court has been clear that

the exclusionary rule is a “judicially created remedy” and not a requirement of the

Fourth Amendment. See Davis v. United States, 564 U.S. 229 (2011); see also Stone

v. Powell, 428 U.S. 465, 494 at n.37 (1976) (holding that “the exclusionary rule is a

judicially created remedy rather than a personal constitutional right”). Thus,

although Grady held that the Fourth Amendment itself applies in the civil context, it

does not follow that the exclusionary rule also must apply there. Indeed, Grady dealt

 -9-
 FARRELL V. THOMAS

 Opinion of the Court

solely with whether imposing satellite-based monitoring on sex offenders in a civil

proceeding amounted to a search under the Fourth Amendment; the decision does not

even mention the exclusionary rule.

 We agree with our dissenting colleague that there are strong policy reasons for

applying the exclusionary rule in civil license revocation cases. Indeed, the majority

in this case also was in the majority in Combs, which pointed out that there was a

significant split in our sister states on this issue, making it suitable for review by our

Supreme Court. Combs, __ N.C. App. at __, 767 S.E.2d at 929, appeal dismissed,

review denied, __ N.C. __, 776 S.E.2d 194 (2015). Our Supreme Court nevertheless

dismissed the Combs appeal on the ground that it did not present a substantial

constitutional question, and denied discretionary review, leaving our precedent from

Combs, Hartman, and Quick intact. Id.

 We remain bound by that precedent until an intervening decision of our

Supreme Court or the U.S. Supreme Court overrules it and—for the reasons

explained above—Grady does not. Accordingly, we are constrained to reject Farrell’s

argument.

 Conclusion

 For the reasons discussed above, we reverse the superior court.

 REVERSED.

 Judge DILLON concurs by separate opinion.

 - 10 -
 FARRELL V. THOMAS

 Opinion of the Court

Judge HUNTER, JR. dissents by separate opinion.

 -2-
 No. COA15-257 – FARRELL V. THOMAS

 DILLON, Judge, concurring.

 I agree with the majority’s conclusion that the Commissioner’s findings are

sufficient to establish that the officer had reasonable grounds (i.e. probable cause) to

believe Mr. Farrell was driving while impaired.

 I agree with the majority’s conclusion that the State’s dismissal of Mr. Farrell’s

DWI charge does not bar the DMV from suspending Mr. Farrell’s license,

notwithstanding the written notation on the DWI dismissal form which suggests that

the prosecutor believed that the State’s evidence would be “suppressed due to a pre-

arrest request violation.” The majority reasons that even if Mr. Ferrell’s Fourth

Amendment rights were violated, the exclusionary rule would not apply since the rule

is not part of the Fourth Amendment but rather is a judicial remedy that does not

apply to a DMV hearing. The dissent argues that the exclusionary rule should apply,

notwithstanding our case law to the contrary, in light of the recent United States

Supreme Court holding in Grady v. North Carolina, 575 U.S. ___ (2015) (per curiam).

 I write separately because I do not believe we need to reach the issue of

whether the exclusionary rule still applies in a DMV hearing, in light of Grady.

Specifically, I do not believe the DMV is estopped from making a reasonable grounds

(probable cause) determination because of the decision (or reasoning) of an assistant

district attorney not to pursue the DWI charge.
No. COA15-257 – Farrell v. Thomas

 HUNTER, JR., Robert N., Judge, Dissenting.

 The Fourth Amendment protects the “right of the people to be secure in their

persons, house, papers, and effects, against unreasonable searches and seizures . . .

and no Warrants shall issue, but upon probable cause . . . .” U.S. Const. amend. IV.

Our State Constitution protects these same rights by prohibiting general warrants,

which “are dangerous to liberty” N.C. Const. art. I, section 20. To protect these

rights, both courts created the exclusionary rule, making “all evidence seized in

violation of the Constitution . . . inadmissible in a State court as a matter of

constitutional law.” State v. Cherry, 298 N.C. 86, 92, 257 S.E.2d 551, 556–57 (1979).

 Historically, the exclusionary rule has not been applied in civil proceedings.

Quick v. North Carolina Div. or Motor Vehicles, 125 N.C. App. 123, 127, 479 S.E.2d

226, 228 n. 3 (1997) (citing United States v. Janis, 428 U.S. 433, 459–60 (1976)). Our

Supreme Court “has long viewed drivers’ license revocations as civil, not criminal, in

nature.” State v. Oliver, 343 N.C. 202, 207–08, 470 S.E.2d 16, 20 (1996) (citations

omitted). Consequently, our Court has held that “evidence in a license revocation

hearing . . . is not subject to the exclusionary rule.” Hartman v. Robertson, 208 N.C.

App. 692, 698, 703 S.E.2d 811, 816 (2010) (citing Quick, 125 N.C. App. at 127 n. 3,

479 S.E.2d at 228–29).

 Prior to Grady v. North Carolina, 575 U.S. ___, 135 S. Ct. 1368 (2015), our

Court noted this impasse, stating, “unless our Supreme Court holds otherwise the
 FARRELL V. THOMAS

 Hunter, Jr., J., Dissenting

Fourth Amendment’s exclusionary rule does not apply in civil proceedings such as

driver’s license revocation hearings . . . .” Combs v. Robertson, ___ N.C. App. ___, ___,

767 S.E.2d 925 (Feb. 3, 2015) (No. COA14–709). Without the benefit of Grady, our

Court has been obligated to affirm license revocation decisions that are based upon a

record of unconstitutional evidence. See Hartman, 208 N.C. App. at 697, 703 S.E.2d

at 815 (“Petitioner’s second argument is that, because the traffic stop was illegal, the

evidence gathered subsequent to the stop should have been suppressed. We

disagree.”); Combs, ___ N.C. App. at ___, 767 S.E.2d at 926–27 (“[P]olice violated

Petitioner[‘s] Fourth Amendment rights by stopping her without reasonable

suspicion. . . . Without the exclusionary rule, we must . . . affirm DMV’s revocation of

[Petitioner’s] driver’s license.”)

 This precedent was best critiqued by the United States Supreme Court in

Grady, in the context of civil satellite based monitoring. At the State level, our Court

“placed decisive weight on the fact that the State’s monitoring program is civil in

nature.” Grady, 575 U.S. ___, 135 S. Ct. at 1371 (citation omitted). We affirmed the

order imposing Grady’s satellite based monitoring, and our Supreme Court

“summarily dismissed [his] appeal and denied his petition for discretionary review.”

Id. at ___, 135 S. Ct. at 1370 (citation omitted). On appeal, the United States

Supreme Court granted certiorari and published a per curiam opinion. The Court

reasoned, “the Fourth Amendment’s protection extends beyond the sphere of criminal

 2
 FARRELL V. THOMAS

 Hunter, Jr., J., Dissenting

investigations.” Id. at ___, 135 S. Ct. at 1371 (citing Ontario v. Quon, 560 U.S. 746,

755 (2010); Camara v. Municipal Court of City and County of San Francisco, 387 U.S.

523 (1967)). The Grady Court held the monitoring program “is plainly designed to

obtain information. And since it does so by physically intruding on a subject’s body,

it effects a Fourth Amendment search.” Grady, 575 U.S. at ___, 135 S. Ct. at 1371.

The Court vacated and remanded the case, directing “North Carolina courts [to]

examine whether the States’ monitoring program is reasonable—when properly

viewed as a [Fourth Amendment] search . . . .” Id.

 Other states have resolved this issue in their highest courts, protecting Fourth

Amendment rights by applying the exclusionary rule to license revocation

proceedings. See Olson v. Comm’r of Pub. Safety, 371 N.W.2d 552, 556 (Minn. 1985);

Pooler v. Motor Vehicles Div., 306 Or. 47, 755 P.2d 701 (1988); Vermont v. Lussier,

171 Vt. 19, 757 A.2d 1017 (2000); State v. Nickerson, 170 Vt. 654, 756 A.2d 1240

(2000). With the hindsight of Grady, our Supreme Court is now ripe to consider

whether the exclusionary rule should apply in civil license revocation proceedings, to

allow the trial court to determine whether a police search was “reasonable” and if any

evidence obtained should be suppressed.

 I would hold the majority’s view of the standard of review is erroneously

applied in this case and others arising from the revocation of driver’s licenses. As the

majority states, “the Superior Court review” shall be limited to whether there is

 3
 FARRELL V. THOMAS

 Hunter, Jr., J., Dissenting

sufficient evidence in the record to support the Commissioner’s findings of fact and

whether the conclusions of law are supported by the findings of fact and whether the

Commissioner committed an error of law in revoking the license. N.C. Gen. Stat. §

20.162(e) (2015).

 Here, I concur that Appellant has not produced record evidence that the

procurement of his breathalyzer was the result of an illegal search. Under the

procedures used to revoke his license, he could not do so because a hearing officer is

not a judicial officer with the jurisdictional mandate to enforce an illegal

search. Assuming arguendo that the search was illegal, then in that event, I would

hold in favor of remanding to the Superior Court to make findings on the

constitutional issue on whether the Commissioner committed an error of law in

revoking the license. Otherwise, unconstitutionally procured evidence could be used

to support a governmental action to revoke a license. The use of the writ of certiorari

to make findings of fact to reach legal issues not within the jurisdictional mandate of

a body they are reviewing is not novel but a traditional use of the writ. See Wilson

Realty Co. v. City and County Planning Bd. for City of Winston-Salem and Forsyth

County, 243 N.C. 648, 655–56, 92 S.E.2d 82, 87 (1956) (“Certiorari, as an independent

remedy, is designed to review and examine into proceedings of lower tribunals and to

ascertain their validity and correct errors therein. The writ issues to review

 4
 FARRELL V. THOMAS

 Hunter, Jr., J., Dissenting

proceedings of inferior boards and tribunals which are judicial or quasi[-]judicial in

nature.”) (citation omitted).

 5