RICHARD LEON QUICK, PETITIONER v. NORTH CAROLINA DIVISION OF MOTOR VEHICLES, RESPONDENT

No. COA96-361

(Filed 7 January 1997)

**Automobiles and Other Vehicles § 92 (NCI4th)— unlawful arrest—refusal to take breathalyzer test—revocation of license**

Petitioner's willful refusal to submit to a chemical analysis could be used to revoke his driver's license pursuant to N.C.G.S. § 20-16.2 even if his arrest did not comply with N.C.G.S. § 15A-401(b)(2) where petitioner was charged with an implied-consent offense after driving on a highway or public vehicular area and the arresting officer had reasonable grounds to believe petitioner had committed an implied-consent offense. The 1983 amendment which substituted "charged" for "arrested" in N.C.G.S. § 20-16.2(a) did not require that the charge be lawful in order to require the driver to submit to a chemical analysis.

**Am Jur 2d, Automobiles and Highway Traffic §§ 122-132.**

**Suspension of revocation of driver's license for refusal to take sobriety test. 88 ALR2d 1064.**

Appeal by petitioner from judgment entered 3 January 1996 in Mecklenburg County Superior Court by Judge Robert P. Johnston. Heard in the Court of Appeals 4 December 1996.

*Ledford & Murray, by Joseph L. Ledford, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General T. Lane Mallonee, for the State.*

GREENE, Judge.

Richard Leon Quick (petitioner) appeals a judgment from superior court upholding the revocation of his drivers license by the North Carolina Division of Motor Vehicles (respondent).

The undisputed facts are that on 18 January 1995 at 12:45 a.m. Officer Newcomb (Newcomb) responded to a call concerning a single car accident. Upon arriving at the scene, Newcomb saw that another law enforcement officer was on the scene and that a vehicle was on the side of the road and damaged to the point it was not driveable. Upon seeing that the driver of the vehicle, petitioner, was a fellow police officer and in no need of medical attention, Newcomb radioed for a senior officer and another officer to help with the accident scene.

Newcomb smelled alcohol coming from petitioner and noticed that petitioner was having difficulty standing and "appeared to be upset about something" and told Newcomb that he had been out driving around and "something about problems at home of some sort." Petitioner was cooperative and told Newcomb to "do your job."

Newcomb said that petitioner "performed rather poorly" on the field sobriety tests and blew a .14 on the alco-sensor. From petitioner's results on all the tests, Newcomb formed the belief that petitioner had committed an implied-consent offense and placed him under arrest. Petitioner was transported to the intake center where a chemical analyst advised petitioner of his rights pursuant to N.C. Gen. Stat. § 20-16.2 (1993). After explaining the procedure to take the breath test, petitioner was asked to blow into the machine two separate times and both times he refused. Petitioner was recorded as having willfully refused to submit to a chemical analysis and his license was revoked pursuant to section 20-16.2(a)(2).

Petitioner requested a *de novo* hearing in superior court to appeal the revocation of his license. At the hearing, petitioner moved to

suppress any evidence of his willful refusal to take the chemical analysis based on the argument that pursuant to N.C. Gen. Stat. § 15A-401(b)(2) (1988), his arrest was unlawful. Affirming the revocation of petitioner's license, the trial court concluded: (1) petitioner was charged with an implied-consent offense; (2) Newcomb had reasonable grounds to believe petitioner committed such offense; (3) petitioner was notified of his rights; and (4) petitioner willfully refused to submit to a chemical analysis.

The issue is whether petitioner's willful refusal to submit to a chemical analysis can be used to revoke his drivers license when his arrest was not in compliance with section 15A-401(b)(2).

The petitioner argues that because his arrest was not in compliance with section 15A-401(b)(2), his willful refusal to submit to a chemical analysis could not be the basis for the revocation of his license under section 20-16.2(d).[1] We disagree.

Even assuming the arrest of the petitioner was not in compliance with section 15A-401(b)(2), because petitioner was "charged with an implied-consent offense" after driving on a "highway or public vehicular area" and because Newcomb had "reasonable grounds to believe [the petitioner] ha[d] committed the implied-consent offense," N.C.G.S. § 20-16.2(a), the trial court correctly affirmed the revocation of the petitioner's license on the basis of his refusal to take the chemical analysis.

In *In re Gardner*, 39 N.C. App. 567, 251 S.E.2d 723 (1979), and *In re Pinyatello*, 36 N.C. App. 542, 245 S.E.2d 185 (1976), this Court determined that even if an arrest for an implied-consent offense does not comply with section 15A-401(b)(2), "the petitioner . . . could not willfully refuse to take the [chemical analysis] without incurring" the revocation of his license. *Gardner*, 39 N.C. App. at 572, 251 S.E.2d at 726; *see Pinyatello*, 36 N.C. App. at 545, 245 S.E.2d at 187; N.C.G.S. § 20-16.2(d) (1993) (twelve months revocation of license for willfully refusing to submit to chemical analysis). When determining whether revocation of petitioner's license was proper, "we are not concerned

---

1 The petitioner does not argue, and we do not address whether evidence of his refusal to submit to a chemical analysis must be suppressed (at the civil revocation hearing) on the grounds that the arrest was unconstitutional. Indeed the petitioner concedes that the arrest was constitutional in that Newcomb had "probable cause to believe that [petitioner] had committed the offense of Driving While Subject to an Impaired Substance." *See In re Gardner*, 39 N.C. App. 567, 572-73, 251 S.E.2d 723, 726-27 (1979) (distinguishing unlawful arrest from unconstitutional arrest).

with the admissibility or suppression of evidence," but only with "whether the petitioner's driving privilege was properly revoked . . . because of his willful refusal to take a [chemical analysis.]" *Gardner*, 39 N.C. App. at 574, 251 S.E.2d at 727. "The question of the legality of his arrest . . . [is] simply not relevant to any issue presented in" the hearing to determine whether his license was properly revoked. *Id.*

We are aware that section 20-16.2 has been amended by the legislature since our decisions in *Gardner* and *Pinyatello*. At the time of *Gardner* and *Pinyatello*, section 20-16.2(a) stated that:

> Any person who drives or operates a motor vehicle upon any highway or any public vehicular area shall be deemed to have given consent subject to the provisions of G.S. 20-139.1, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood *if arrested* for any offense arising out of acts alleged to have been committed while the person was driving or operating a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the request of a law enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle . . . while under the influence of intoxicating liquor. . . .

1973 N.C. Sess. Laws ch. 206, § 1, amended, 1983 N.C. Sess. Laws ch. 435, § 11 (emphasis added). The same section now states that:

> Any person who drives a vehicle on a highway or public vehicular area thereby gives consent to a chemical analysis *if charged* with an implied-consent offense. The charging officer must designate the type of chemical analysis to be administered, and it may be administered when the officer has reasonable grounds to believe that the person charged has committed the implied-consent offense.

N.C.G.S. § 20-16.2(a) (1993) (emphasis added). The petitioner argues that these changes reflect an intention by the legislature to overrule *Gardner* and *Pinyatello* and thus require that the petitioner be *lawfully* "charged" before he can be required to take the chemical analysis. We disagree. Although the legislature did substitute "charged"[2] for "arrested," it did not add any language suggesting that the charge

2. A person is "charged" within the meaning of section 20-16.2(a) "if he is arrested for [an implied-consent offense] or if criminal process for the offense has been issued." N.C.G.S. § 20-16.2(a1) (1993).

must be lawful as a prerequisite to requiring the driver to submit to a chemical analysis.

Petitioner argues alternatively that we should overturn *Gardner* and *Pinyatello* on the basis that evidence obtained as a result of an illegal arrest (the refusal to submit to a chemical analysis) should be excluded from the civil revocation proceeding. This Court is bound by its prior decisions addressing the same questions, *Moore v. Stern*, 122 N.C. App. 270, 274, 468 S.E.2d 607, 609-10, *disc. rev. denied*, 343 N.C. 512, 472 S.E.2d 15 (1996), and therefore petitioner's request to overturn our prior decisions is rejected.[3]

Affirmed.

Judges WYNN and MARTIN, John C., concur.

———————————

3. The United States Supreme Court has held that the exclusionary rule does not apply in the context of civil proceedings, *United States v. Janis*, 428 U.S. 433, 459-60, 49 L. Ed. 2d 1046, 1064 (1976), and our own Supreme Court has held that a license revocation proceeding is civil in nature. *State v. Oliver*, 343 N.C. 202, 207, 470 S.E.2d 16, 20 (1996).