IN THE MATTER OF PATRICK JASON MURRAY, Juvenile/Appellant

No COA99-475

(Filed 15 February 2000)

### 1. Search and Seizure— school official—weapon in student's book bag—reasonableness

The trial court did not err in denying defendant's motion to suppress evidence of a pellet gun found in defendant's book bag at school by a school official because: (1) the search was reasonable at its inception since the principal received a student's unsolicited tip that defendant had something in his book bag that he should not have at school, followed by defendant's lie that he did not have a book bag, which would provide sufficient grounds to decide that a search of the book bag would yield evidence that defendant had broken a school rule or law; and (2) the search was conducted in a reasonable manner, even though the school's dean of students and resource officer handcuffed defendant before the principal searched the book bag, in light of the facts that the principal had the right to search the book bag, defendant refused to turn it over voluntarily, defendant physically protected the bag when the principal attempted to take it, and defendant began struggling with the school's dean of students and resource officer.

### 2. Schools and Education— possession of weapon—sufficiency of evidence

The trial court did not err in denying defendant's motion to dismiss his charges for possessing a pellet gun on school property in violation of N.C.G.S. § 14-269.2(d) based on the State's failure to show defendant had exclusive possession of the book bag in which the pellet gun was found or its contents because viewed in the light most favorable to the State, the evidence reveals defendant admitted the book bag was his, it was within his reach when the principal walked into the classroom, and no one else was in the room.

Appeal by juvenile from orders entered 5 January 1999 by Judge Rebecca W. Blackmore in New Hanover County District Court. Heard in the Court of Appeals 18 November 1999.

*Michael F. Easley, Attorney General, by T. Brooks Skinner, Jr., Assistant Attorney General, for the State.*

*Smith, Smith & Harjo, by Jennifer Harjo, for juvenile-appellant.*

EDMUNDS, Judge.

Juvenile Patrick Jason Murray (Murray) appeals the trial court's order denying his motion to suppress and the order adjudicating him to be a delinquent pursuant to N.C. Gen. Stat. § 7A-517(12) (Supp. 1998) (repealed effective July 1, 1999). We affirm.

On 15 October 1998, Williston Middle School Assistant Principal LaChawn Smith (Ms. Smith) was approached by a student who told her, "Jason had—Murray had something in his book bag that he should not have at school." Ms. Smith found Murray alone in Room 105. In response to her question, he denied having a book bag. However, Ms. Smith noticed a red book bag "less than an arm's reach away" from Murray and asked if it was his. When Murray acknowledged that it was, Ms. Smith asked him to accompany her about twenty feet to her office. As they walked, Murray carried his book bag. Once they reached her office, Ms. Smith asked Murray if there was anything in the book bag that should not be there. He answered that there was not. Ms. Smith then advised Murray that she needed to search the bag. He responded that he did not want her to search it and expressed a desire that his father be called.

Ms. Smith contacted the school's Dean of Students and the school's Resource Officer, Deputy Johnson. After Deputy Johnson and the Dean arrived, they explained to Murray that they "needed to search his book bag because [they] were concerned about his safety and the safety of others in the building." However, when Ms. Smith attempted to take possession of the book bag, Murray "clamped down on it." Deputy Johnson testified at the suppression hearing: "I then grabbed [Murray], and he struggled with me a little bit. So, I cuffed him so that he wouldn't hurt himself or I wouldn't get hurt in the incident." Once the book bag was secured, Ms. Smith opened it and found a pellet gun. Deputy Johnson then removed the handcuffs from Murray and the principal called his father.

Murray filed a motion to suppress the physical evidence. After conducting a hearing, the trial court denied the motion, then adjudicated Murray delinquent for possessing a weapon on school property,

in violation of N.C. Gen. Stat. § 14-269.2(d) (Supp. 1998). Murray appeals.

I.

**[1]** Murray first challenges the trial court's failure to suppress the fruits of the search of the book bag. Initially, we must determine the standard to be used in reviewing the legality of the search. The standard we use depends on whether a school official or law enforcement officer conducted the search.

The record reveals that Ms. Smith, an assistant principal, received information that focused her suspicion on Murray's book bag. After initially confronting Murray and receiving contradictory information from him, she escorted Murray to her office, where she asked if she could search his book bag. Only after the student refused to allow a voluntary search did she call for Deputy Johnson and the Dean of Students. She testified, "I needed someone with greater strength than I have," indicating that she had decided to search the bag. Deputy Johnson handcuffed Murray only after Murray made it obvious that he was not going to relinquish his book bag without a struggle. Deputy Johnson acted to enable Ms. Smith to obtain the bag and search it. He did not search the bag himself, nor did he conduct any investigation on his own. Therefore, we hold that the search of Murray's book bag was conducted by a school official. *See Cason v. Cook*, 810 F.2d 188, 192 (8th Cir. 1987) ("At most . . . this case represents a police officer working *in conjunction with* school officials."); *see also Martens v. District No. 220, Bd. of Educ.*, 620 F. Supp. 29 (N.D. Ill. 1985); *Coronado v. Texas*, 806 S.W.2d 302 (Tex. App. 1991), *rev'd on other grounds*, 835 S.W.2d 636 (Tex. Crim. App. 1992). Consequently, we review the search in light of *New Jersey v. T.L.O.*, 469 U.S. 325, 83 L. Ed. 2d 720 (1985), wherein the United States Supreme Court examined the legality of a school official's search of a student's purse.

In *T.L.O.*, a student was discovered smoking in a school lavatory. Although caught in the act, the student denied even being a smoker. When the school's assistant vice-principal searched the student's purse for cigarettes, he also found marijuana, rolling papers, and other paraphernalia. In holding that the search was reasonable, the Supreme Court acknowledged the difficulties faced by schools in maintaining discipline. The Court observed that the majority of lower courts had held, "the Fourth Amendment applies to searches conducted by school authorities, but the special needs of the school envi-

ronment require assessment of the legality of such searches against a standard less exacting than that of probable cause." *Id.* at 332 n.2, 83 L. Ed. 2d at 728-29. Agreeing with those courts, the Supreme Court held:

> [T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the . . . action was justified at its inception," *Terry v. Ohio,* [392 U.S. 1, 20, 20 L. Ed. 2d 889, 905 (1968)]; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," *ibid.*

*Id.* at 341, 83 L. Ed. 2d at 734 (omission in original).

Because the *T.L.O.* reasonableness standard applies to the facts of this case, we first examine whether the search was reasonable at its inception.

> Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

*Id.* at 341-42, 83 L. Ed. 2d at 734-35. "[T]he requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . .' " *Id.* at 346, 83 L. Ed. 2d at 737 (omission in original) (quoting *Hill v. California,* 401 U.S. 797, 804, 28 L. Ed. 2d 484, 490 (1971)).

In the case at bar, Ms. Smith received an unsolicited tip from a student that Murray had something in his book bag that he should not have at school. At the time, Ms. Smith was walking to a classroom in order to escort Murray to another classroom. Although she testified that she was doing so because of a "disturbance," further details are not set out in the record. When she found Murray, he was alone in a classroom and a red book bag lay within his reach. She asked him if he had a book bag, and he falsely answered that he did not. Only when she asked him specifically if the red book bag was his did he admit ownership. The student's tip, followed by Murray's lie, pro-

vided sufficient grounds for a reasonable person to decide that a search of the book bag would yield evidence that Murray had broken a school rule or law. Ms. Smith's decision to search the book bag, like the decision to search the purse in *T.L.O.*, was "the sort of 'common-sense conclusio[n] about human behavior' upon which 'practical people'—including government officials—are entitled to rely." *Id.* at 346, 83 L. Ed. 2d at 737 (quoting *United States v. Cortez*, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 629 (1981)) (alteration in original); *see generally* Myron Schreck, *The Fourth Amendment in the Public Schools: Issues for the 1990s and Beyond*, 25 Urb. Law. 117 (1993) (discussing various court cases that have addressed whether searches conducted by school officials were reasonable).

Having determined that Ms. Smith had reasonable grounds for suspicion, we next turn to the second prong of the *T.L.O.* test, which requires that the search be conducted in a reasonable manner. A "search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342, 83 L. Ed. 2d at 735. Ms. Smith's search, confined to the book bag, was reasonable in scope. Murray contends that it was improper and excessive for Deputy Johnson to handcuff him before Ms. Smith searched the book bag. However, we hold that this measure was reasonable in light of the circumstances. Although Ms. Smith had the right to search the book bag, Murray refused to turn it over voluntarily. He physically protected the bag when Ms. Smith attempted to take it and then began struggling with Deputy Johnson. Handcuffs insured that Ms. Smith could safely search the bag without interference and allowed the deputy to control a potentially unpleasant or even perilous situation. Deputy Johnson released Murray as soon as Ms. Smith found the pellet gun and any danger of disruption dissipated. Therefore, consistent with the Supreme Court's holding in *T.L.O.*, we hold that the trial court properly denied Murray's motion to suppress the search.

Murray also contends that the search violated the constitution of North Carolina. Because there is no variance between North Carolina's law of search and seizure and the requirements of the Fourth Amendment to the Constitution of the United States, *see State v. Hendricks*, 43 N.C. App. 245, 251-52, 258 S.E.2d 872, 877 (1979), we hold that the search was proper under the laws of North Carolina. This assignment of error is overruled.

IN RE MURRAY

[136 N.C. App. 648 (2000)]

## II.

[2] Murray next claims the trial court erred in denying his motion to dismiss for insufficiency of the evidence at the close of the State's case and at the close of all the evidence. The trial court found that Murray violated N.C. Gen. Stat. § 14-269.2(d), which makes it a Class 1 misdemeanor "for any person to possess or carry, whether openly or concealed, any BB gun, stun gun, air rifle, air pistol . . . on educational property." Murray argues that the State failed to show he had "exclusive possession of the bag or its contents."

"In ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, which is entitled to every reasonable inference which can be drawn from that evidence." *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91 (1997) (citation omitted). The motion to dismiss should be denied if there is substantial evidence of each element of the crime. *See State v. Bates*, 309 N.C. 528, 308 S.E.2d 258 (1983). Substantial evidence is such relevant evidence that a reasonable mind might find sufficient to support a conclusion. *See State v. Smith*, 300 N.C. 71, 265 S.E.2d 164 (1980). Exclusive possession need not be shown where other incriminating evidence supports constructive possession. *See State v. Mitchell*, 104 N.C. App. 514, 410 S.E.2d 211 (1991). Here, Murray admitted the book bag was his, it was within his reach when Ms. Smith walked into the classroom, and no one else was in the room. Murray's other conduct, detailed above, is consistent with guilty knowledge. There was no evidence that anyone other than Murray possessed the book bag or that there was an opportunity for someone to put the pellet gun into it. Consequently, we hold that the State presented sufficient evidence for a reasonable mind to conclude that Murray knowingly possessed a pellet gun on educational property. This assignment of error is overruled.

Affirmed.

Judges McGEE and HORTON concur.