RAYMOND BILL HARTMAN, PETITIONER v. MICHAEL ROBERTSON, COMMISSIONER
OF MOTOR VEHICLES, NORTH CAROLINA DIVISION OF MOTOR VEHICLES,
RESPONDENT

No. COA10-636

(Filed 21 December 2010)

### 1. Motor Vehicles— implied-consent offense—refusal of chemical test—license revocation proper

The trial court did not err in affirming respondent's order upholding the revocation of petitioner's driver's license for refusing to submit to a chemical test. The propriety of the police officers' initial traffic stop of defendant was not within the statutorily-prescribed purview of a license revocation hearing, the evidence supported the challenged findings of fact, and the findings of fact supported the conclusion of law that police officers had reasonable grounds to believe that petitioner had committed an implied-consent offense.

### 2. Search and Seizure— traffic stop—implied-consent offense —motion to suppress evidence—not subject to exclusionary rule

The Court of Appeals rejected petitioner's argument that evidence gathered subsequent to his stop for a suspected implied-consent offense should have been suppressed because the traffic stop was illegal. Even if the officers lacked reasonable and articulable suspicion to stop petitioner, the evidence that resulted from the stop was not subject to the exclusionary rule.

Appeal by petitioner from order entered 11 February 2010 by Judge W. David Lee in Iredell County Superior Court. Heard in the Court of Appeals 3 November 2010.

*Homesley, Goodman & Wingo, PLLC, by Ronnie D. Crisco, Jr., for petitioner-appellant.*

*Attorney General Roy A. Copper, III, by Assistant Attorneys General Christopher W. Brooks and William P. Hart, Jr., for the State, respondent-appellee.*

JACKSON, Judge.

Raymond Bill Hartman ("petitioner") appeals an order entered 11 February 2010 affirming the revocation of his driver's license pur-

suant to North Carolina General Statutes, section 20-16.2(e). For the reasons set forth below, we affirm.

On 24 April 2009, Mooresville Police Dispatch received an anonymous call reporting that a driver of a silver Mercedes Benz ("the Mercedes") was driving erratically near a Citgo gas station off Williamson Road and possibly was intoxicated. Officers Richard Kratz ("Officer Kratz") and Darren Furr ("Officer Furr") (collectively "the officers") responded to the call and proceeded toward the Citgo gas station parking lot. As the officers were entering the parking lot, the dispatch told the officers that the anonymous tipster, who still was on the phone line, said that the Mercedes was leaving the gas station parking lot. Officer Kratz saw a silver Mercedes Benz that matched the caller's description; the Mercedes exited the parking lot, and the officers followed it.

As the Mercedes approached a red traffic signal to turn right onto Alcove Road, Officer Kratz observed it cross over the stop line and partially enter the intersection prior to stopping completely. The Mercedes then turned right onto Alcove Road, and the officers followed it down that road. Officer Kratz estimated the speed of the Mercedes at approximately sixty-five miles per hour in a forty-five miles per hour zone and initiated a traffic stop. Petitioner was the driver of the Mercedes. Officer Furr first approached petitioner and asked him for his license and registration. He then asked if petitioner had been drinking. Petitioner responded that he had had two beers and was on his way home. Officer Furr asked petitioner to step out of the car and approach the rear of the car where Officer Kratz was standing. Officer Kratz noticed that petitioner was "very unsteady" on his feet, "had glassy eyes," and had "a strong odor" of alcohol on his breath. As Officer Furr ran a diagnostic on petitioner's license, Officer Kratz asked petitioner to submit to two field sobriety tests. Petitioner failed the field sobriety tests, and the officers arrested petitioner for driving while impaired. When he arrived at the Mooresville Police Department, petitioner refused to submit to a chemical analysis.

In a letter dated 8 March 2009, the North Carolina Division of Motor Vehicles ("respondent") notified petitioner that, pursuant to North Carolina General Statutes, section 20-16.2, petitioner's license would be suspended for one year for refusing to submit to a chemical test. Petitioner requested a hearing to contest the revocation, and on 16 November 2009, respondent entered an order upholding the revocation. On 25 November 2009, petitioner filed a petition for *de novo*

hearing. On 11 February 2010, the superior court affirmed the revocation. Petitioner appeals.

[1] Petitioner first argues that Officer Kratz did not have reasonable and articulable suspicion to initiate a traffic stop of the Mercedes on 24 April 2009. We disagree.

"On appeal to this Court, the trial court's Findings of Fact are conclusive if supported by competent evidence, even though there may be evidence to the contrary. We review whether the trial court's Findings of Fact support its conclusions of law *de novo.*" *Steinkrause v. Tatum,* 201 N.C. App. 289, 291-92, 689 S.E.2d 379, 381 (2009) (internal citations omitted), *aff'd,* 364 N.C. 419, 700 S.E.2d 222 (2010) (per curiam). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citations omitted).

North Carolina General Statutes, section 20-16.2(a) provides that "[a]ny law enforcement officer who has reasonable grounds to believe that the person charged has committed the implied-consent offense may obtain a chemical analysis of the person." N.C. Gen. Stat. § 20-16.2(a) (2007). If the person charged refuses to submit to a chemical analysis, his or her license will be revoked for twelve months. N.C. Gen. Stat. § 20-16.2(d) (2007). However, the person charged may request a hearing before the DMV to contest the revocation. *Id.* If the revocation is sustained following the hearing, the person charged has the right to file a petition in the superior court whereupon "[t]he superior court review shall be limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license." N.C. Gen. Stat. § 20-16.2(e) (2007).

North Carolina General Statutes, section 20-16.2(d) provides that the hearing before the DMV with respect to a revocation of a license

*shall be limited* to consideration of whether:

(1) The person was charged with an implied-consent offense . . . ;

(2) A law enforcement officer had reasonable grounds to believe that the person had committed an implied-consent offense . . . ;

(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;

(4) The person was notified of the person's rights as required by subsection (a); and

(5) The person willfully refused to submit to a chemical analysis.

N.C. Gen. Stat. § 20-16.2(d) (2007) (emphasis added).

"In [the license revocation] context, the term 'reasonable grounds' is treated the same as 'probable cause.' " *Rock v. Hiatt*, 103 N.C. App. 578, 584, 406 S.E.2d 638, 642 (1991) (citing *State v. Eubanks*, 283 N.C. 556, 196 S.E.2d 706, *reh'g denied*, 285 N.C. 597 (1973); *State v. Adkerson*, 90 N.C. App. 333, 368 S.E.2d 434 (1988)). "[P]robable cause exists if the facts and circumstances at that moment and within the arresting officer's knowledge and of which the officer had reasonably trustworthy information are such that a prudent man would believe that the [suspect] had committed or was committing a crime." *Id.* (citing *State v. Eubanks*, 283 N.C. 556, 559, 196 S.E.2d 706, 708, *reh'g denied*, 285 N.C. 597 (1973)) (second alteration in original).

Here, defendant challenges the officers' reasonable and articulable suspicion for initiating a traffic stop. However, reasonable and articulable suspicion for the initial stop is not an issue to be reviewed pursuant to North Carolina General Statutes, section 20-16.2. According to section 20-16.2, the only inquiry with respect to the law enforcement officer is the requirement that he "ha[ve] reasonable grounds to believe that the person had committed an implied-consent offense[.]" N.C. Gen. Stat. § 20-16.2(d)(2) (2007).

Defendant's contention is similar to the defendant's argument in *Quick v. N.C. Division of Motor Vehicles*, 125 N.C. App. 123, 479 S.E.2d 226, *disc. rev. denied*, 345 N.C. 643, 483 S.E.2d 711 (1997). In *Quick*, the petitioner argued that, because his arrest was illegal, his subsequent willful refusal to submit to a chemical analysis could not be the basis for the revocation of his license pursuant to section 20-16.2(d). *Id.* at 125, 479 S.E.2d at 227. In that case, we held that even if the arrest had been illegal,

> because petitioner was "charged with an implied-consent offense" after driving on a "highway or public vehicular area" and because [the officer] had "reasonable grounds to believe [the petitioner] ha[d] committed the implied-consent offense," N.C.G.S. § 20-16.2(a), the trial court correctly affirmed the revocation of the petitioner's license on the basis of his refusal to take the chemical analysis.

*Id.* (third alteration in original). We further held that " '[t]he question of the legality of [petitioner's] arrest . . . [is] simply not relevant to any issue presented in' the hearing to determine whether his license was properly revoked." *Id.* at 126, 479 S.E.2d at 228 (quoting *In re Gardner*, 39 N.C. App. 567, 574, 251 S.E.2d 723, 727 (1979)) (ellipsis and third alteration in original). "[The] administration of the breathalyzer test . . . hinges solely upon the . . . law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on a highway or public vehicular area while under the influence of intoxicating liquor." *In re Gardner*, 39 N.C. App. 567, 573, 251 S.E.2d 723, 727 (1979) (quoting *State v. Eubanks*, 283 N.C. 556, 561, 196 S.E.2d 706, 709, *reh'g denied*, 285 N.C. 597 (1973)) (internal quotation marks omitted) (second ellipsis in original). Accordingly, the propriety of the initial stop is not within the statutorily-prescribed purview of a license revocation hearing.

Furthermore, pursuant to our standard of review, the hearing officer's findings are supported by the evidence and his conclusions are supported by the findings. Petitioner challenges only two findings of fact: "6. The Petitioner stopped past the intersection midway into it then turned right onto Alcove Road" and "7. Officer Kratz followed the Petitioner and estimated the Petitioner's speed to be 65/45mph zone at the time of the initial a [sic] stop." However, competent evidence supports these findings. Officer Kratz testified that petitioner "stopped with the vehicle in the intersection. It actually crossed the stop bar angled to the right in the intersection." Officer Kratz also testified that he "followed the vehicle, caught up to it[,] estimated speed was approximately 65mph, that's a 45mph zone." Officer Kratz's testimony is competent evidence that supports both of the challenged findings.

Petitioner also challenges the hearing officer's second conclusion of law, which reads, "A law enforcement officer, Richard Kratz and Officer Darren Furr had reasonable grounds to believe that the Petitioner had committed an implied-consent offense." This conclusion is supported by the findings of fact. The hearing officer made the following relevant findings of fact, none of which are disputed by petitioner:

> 3. Officer Kratz came into contact with the Petitioner on April 24, 2009 at 07:30PM when he and Officer Darren Furr, Field Training Officer, received a call from Dispatch indicating someone in a silver Mercedes Benz near exit 33 and Williamson Road near a Citgo Gas Station displaying erratic driving and possibly intoxicated.

4. Officer Kratz proceeded to the area and observed the Petitioner exiting a Citgo Gas Station PVA driving a silver Mercedes Benz.

. . . .

9. Officer Furr asked the Petitioner if he had consumed any alcohol; the Petitioner answered "yes, I drank two beers and was on [my] way home."

10. Officer Furr asked the Petitioner to step out of the vehicle.

11. The Petitioner got out of the vehicle and was unsteady on his feet; had glassy eyes; and a strong odor of alcohol emitting from his breath.

12. The Petitioner did not advise of any disabilities or injuries upon request to perform Field Sobriety Tests.

13. Officer Kratz demonstrated and explained and then asked the Petitioner to perform these Field Sobriety Tests on a smooth level asphalt surface: Walk-and-Turn/Failed; One-Leg Stand/Failed; no Alco-Sensor was done.

We hold that these findings of fact support the conclusion of law that "[a] law enforcement officer, Richard Kratz and Officer Darren Furr had reasonable grounds to believe that the Petitioner had committed an implied-consent offense." Accordingly, we affirm the superior court's order, which affirmed the revocation of petitioner's license.

[2] Petitioner's second argument is that, because the traffic stop was illegal, the evidence gathered subsequent to the stop should have been suppressed. We disagree.

" 'We review questions of law *de novo.*' " *Davis v. N.C. Dep't of Crime Control & Pub. Safety*, 151 N.C. App. 513, 516, 565 S.E.2d 716, 719 (2002) (quoting *Staton v. Brame*, 136 N.C. App. 170, 174, 523 S.E.2d 424, 427 (1999)).

"The Fourth Amendment [to] the United States Constitution secures the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .' " *In re Freeman*, 109 N.C. App. 100, 103, 426 S.E.2d 100, 101 (1993) (quoting U.S. Const. amend. IV). Article I, section 20 of our North Carolina Constitution provides the same protections as the federal Fourth Amendment. *In re Murray*, 136 N.C. App. 648, 652, 525 S.E.2d 496, 500 (2000) (citing *State v. Hendricks*, 43 N.C. App. 245, 251-52, 258 S.E.2d 872, 877 (1979), *disc. rev. denied*, 299 N.C. 123, 262 S.E.2d 6 (1980)).

**HARTMAN v. ROBERTSON**

[208 N.C. App. 692 (2010)]

"Separate and apart from the question of whether a party's Fourth Amendment rights have been violated is the question of whether a violation requires the exclusion, in any civil or criminal proceeding, of evidence obtained as a result of the violation." *In re Freeman*, 109 N.C. App. at 103, 426 S.E.2d at 101 (citing *Illinois v. Gates*, 462 U.S. 213, 223, 76 L. Ed. 2d 527, 538-39, *reh'g denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983)). According to our Supreme Court, "[i]n deciding whether the exclusionary rule should be applied . . . , we must keep in mind its purpose." *State v. Lombardo*, 306 N.C. 594, 599, 295 S.E.2d 399, 403 (1982). "Its purpose is 'not to redress the injury' " but " 'to deter future unlawful police conduct' by removing the incentive to disregard the fourth amendment." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 347, 38 L. Ed. 2d 561, 571 (1974)). "The deterrent effect of the exclusionary rule is based on the assumption that a police officer realizes that his duty is to conduct searches and seizures only in a manner that will help secure a *conviction*." *Id.* Our Supreme Court then declined to extend the exclusionary rule to probation revocation hearings. *Id.*

When this Court previously has applied our precedent in this area, it noted that evidence in a license revocation hearing similarly is not subject to the exclusionary rule. *Quick*, 125 N.C. App. at 127 n.3, 479 S.E.2d at 228-29 (declining to apply the exclusionary rule in a license revocation hearing because "[t]he United States Supreme Court has held that the exclusionary rule does not apply in the context of civil proceedings, *United States v. Janis*, 428 U.S. 433, 459-60, 49 L. Ed. 2d 1046, 1064 (1976), and our own Supreme Court has held that a license revocation proceeding is civil in nature. *State v. Oliver*, 343 N.C. 202, 207, 470 S.E.2d 16, 20 (1996)."). Accordingly, whether or not the officers in the case *sub judice* had reasonable and articulable suspicion to stop petitioner, the evidence that resulted from the stop is not subject to the exclusionary rule. Therefore, petitioner's second argument must fail.

Affirmed.

Judges HUNTER and ELMORE concur.