DIETZ, Judge.
*65 In 2013, a Raleigh police officer pulled over a car driven by Petitioner Peter Farrell. When the officer approached Farrell, he noticed that Farrell's eyes were glassy and bloodshot and that his speech was slightly slurred. The officer returned to his patrol car to wait for backup. When he returned to question Farrell further, the officer noticed a strong odor of mouthwash that wasn't there before, and a nearly empty bottle of mouthwash on the floorboard. The officer asked Farrell if he had just used mouthwash, and Farrell lied and said he had not. As the officer continued to question Farrell, he admitted that he had used mouthwash.
*659 Farrell ultimately refused the officer's request to take a breath test after being informed of his implied consent rights and the consequences of refusing to comply. Law enforcement then obtained a blood sample from Farrell, which revealed that Farrell's blood alcohol level was .18.
Because Farrell refused to submit to a breath test upon request, the Division of Motor Vehicles revoked Farrell's driving privileges as required by our State's implied consent laws. Farrell challenged his license revocation and the DMV upheld it following a hearing. Farrell *66 appealed the DMV's order to the Wake County Superior Court. There, the court reversed on the ground that the DMV's findings did not support its conclusion that the officer had reasonable grounds to believe Farrell was driving while impaired.
We reverse. As explained in more detail below, the DMV's findings readily support its conclusion. Those findings establish that the arresting officer observed Farrell with glassy, bloodshot eyes and slightly slurred speech; that, while the officer had returned to his patrol car, Farrell used enough mouthwash to create a strong odor detectable by the officer from outside the car; and that Farrell lied to the officer about using the mouthwash. From these facts, a reasonable officer could conclude that Farrell was impaired and had attempted to conceal the alcohol on his breath by using mouthwash and then lying about having done so. Thus, the DMV did not err in concluding that, based on its uncontested findings of fact, the arresting officer had reasonable grounds to believe Farrell was driving while impaired. Accordingly, we reverse the superior court's order.
Facts and Procedural History
Around 1:30 a.m. on 6 September 2013, Raleigh police received a call about a car driving dangerously at a shopping center. Officer David Maucher traveled to the scene and witnesses described the car as a silver four-door Audi sedan.
As Officer Maucher searched the area in his patrol car, he spotted a silver Audi matching the witnesses' descriptions. Officer Maucher ran a check on the plate and discovered that the car had an expired registration and was past its State-required inspection date. Based on this information, Officer Maucher pulled the car over.
*67 Officer Maucher approached the car and found Farrell in the driver's seat, sitting on top of his seat belt, with glassy, bloodshot eyes and " slightly" slurred speech. Farrell admitted that he had consumed multiple beers earlier in the night.
Officer Maucher returned to his patrol car and requested backup. After other officers arrived, Officer Maucher returned to Farrell's car. As he approached the driver's side window, he smelled a strong odor of mouthwash that was not present the first time he approached the vehicle. Officer Maucher also noticed a nearly empty mouthwash bottle on the floorboard. Officer Maucher asked Farrell if he had just used mouthwash and Farrell said he had not. When Officer Maucher told Farrell that he did not believe him, Farrell relented and said he used "a little" mouthwash.
Officer Maucher then asked Farrell to step out of the vehicle to perform field sobriety tests. Farrell refused to perform the sobriety tests, but indicated that he would take a breath test. Officer Maucher then placed Farrell under arrest for driving while impaired based on the officer's conclusion that Farrell was "under the influence of an impairing substance" and "appreciably impaired by alcohol."
At 2:29 a.m. in the Wake County Detention Center, Officer Maucher, a certified chemical analyst, informed Farrell of his implied consent rights, both orally and in writing in accordance with N.C. Gen.Stat. § 20-16.2(a), and explained to Farrell how to submit a sample of his breath for chemical analysis. After speaking with his brother by phone, Farrell told Officer Maucher that he would not take the breath test. Officer Maucher officially marked Farrell's refusal of chemical analysis at 3:04 a.m. Following this refusal, police obtained a blood sample from Farrell. That test revealed that Farrell had a blood alcohol concentration of .18.
The State charged Farrell with driving while impaired but later dismissed the criminal *660 charges because the prosecutor believed that all evidence resulting from Farrell's stop and arrest would be suppressed under the exclusionary rule.
On 10 October 2013, Farrell received an official notice of license suspension from the DMV, effective 20 October 2013, based on his willful refusal to submit to chemical analysis under N.C. Gen.Stat. § 20-16.2. Upon receiving this notice, Farrell requested a hearing before the DMV.
On 19 February 2014, the DMV found adequate evidence to sustain the revocation of Farrell's driving privileges. Farrell appealed the administrative hearing results to the Wake County Superior Court. On 21 December 2014, the Superior Court reversed the DMV's decision on the basis that the findings of fact did not support the conclusion that Officer Maucher had reasonable grounds to believe Farrell was driving while impaired. The DMV timely appealed.
Analysis
The DMV argues that the superior court erred in reversing its decision. We agree.
In an appeal from a DMV hearing to the superior court under N.C. Gen.Stat. § 20-16.2(e), the superior court acts as an "appellate court." Johnson v. Robertson, 227 N.C.App. 281, 286, 742 S.E.2d 603, 607 (2013). It is not a trier of fact. Id. By statute, the superior court's review "shall be limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of *68 law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license." N.C. Gen.Stat. § 20-16.2(e).
Here, the superior court held there was "sufficient evidence in the record to support the Findings of Fact" but that "Conclusion of Law of [sic] # 2 ... is not supported by the Findings of Fact." In Conclusion of Law # 2, the DMV concluded that "Officer Maucher had reasonable grounds to believe that [Farrell] had committed an implied consent offense." For the reasons explained below, we hold that Conclusion of Law # 2 is supported by the DMV's findings.
In a license revocation proceeding, "the term 'reasonable grounds' is treated the same as 'probable cause.' " Hartman v. Robertson, 208 N.C.App. 692, 695, 703 S.E.2d 811, 814 (2010). "[P]robable cause exists if the facts and circumstances at that moment and within the arresting officer's knowledge and of which the officer had reasonably trustworthy information are such that a prudent man would believe that the [suspect] had committed or was committing a crime." Id.
Thus, in reviewing the DMV's conclusion, we must ask whether the findings of fact establish that Officer Maucher had probable cause to believe Farrell was driving while impaired.[1] As explained below, the findings readily support that conclusion.
The DMV found that, when Officer Maucher approached the car, Farrell's "eyes were glassy and bloodshot and his speech was slightly slurred." The officer returned to his patrol car and when he approached Farrell a second time, he "smelt [sic] a significant strong odor of mouthwash coming from" Farrell. Officer Maucher did not smell this odor when he first approached Farrell's car. Officer Maucher asked Farrell "if he had just washed his mouth out with the mouthwash." Farrell lied and said he had not, then changed his story and admitted he had used "just a little bit" of mouthwash.
These findings are sufficient to establish probable cause. Farrell's glassy, bloodshot eyes and slurred speech alone created a strong suspicion that Farrell might be impaired. Then, Farrell acted in an unusual and suspicious manner by using so much mouthwash while the officer had returned to his patrol car that, when the officer returned, there was "a significant strong odor of mouthwash" detectable from outside Farrell's *69 car. Finally, and perhaps most significantly for the officer's determination of probable cause, Farrell lied to the officer and said he had not used any mouthwash and then, *661 under further questioning, admitted that he had.
From this conduct, the officer had probable cause to believe that Farrell was impaired and sought to hide any odor of alcohol on his breath by using mouthwash and attempting to conceal that he had done so. See United States v. Wilson, 699 F.3d 235, 246 (2d Cir.2012) (finding probable cause to search car for contraband where defendant "lied about having crossed the border at a non-designated border crossing point, and had then admitted to lying," and also admitted to having "scored a little" marijuana while in Canada); People v. McCowen, 159 A.D.2d 210, 213, 551 N.Y.S.2d 925 (N.Y.App.Div.1990) ("Defendant's untruthful answers to officers upon being questioned as to whether he had any gold chains on him provided the predicate for reasonable suspicion to ripen into probable cause."). Accordingly, the DMV properly concluded that Officer Maucher had reasonable grounds (i.e., probable cause) to believe Farrell was driving while impaired.
Farrell next argues that the State's dismissal of his DWI charge is a "judicial admission" that bars the DMV from pursuing a driver's license revocation under the implied consent laws. The record before the DMV did not disclose why the State dismissed the DWI charge. On appeal, Farrell submitted a dismissal document from the criminal case in which a handwritten entry, apparently made by the prosecuting attorney, indicates that the State dismissed the DWI charge because all evidence would be "suppressed due to a pre-arrest request violation."
Ordinarily, we do not consider material not submitted to the trial court, and we cannot tell, from the record before us, whether Farrell raised this issue at the DMV hearing despite not producing the dismissal document. In any event, even assuming Farrell properly raised and preserved this issue below, it is meritless. First, as the concurrence observes, no court in this State has ever held that the decision of an assistant district attorney not to pursue criminal charges, made in the exercise of prosecutorial discretion, is binding on other state agencies that can pursue civil remedies for the same underlying conduct. Second, whatever evidence the prosecutor believed would be suppressed in the criminal case would not have been suppressed at the DMV hearing. It is well-settled that, unlike in a criminal proceeding, the exclusionary rule does not apply in a civil license revocation proceeding like this one. See Combs v. Robertson, --- N.C.App. ----, 767 S.E.2d 925, 928, appeal dismissed, review denied, - -- N.C. ----, 776 S.E.2d 194 (2015) ;
*70 Hartman, 208 N.C.App. at 695, 703 S.E.2d at 814 ; Quick v. N.C. Div. of Motor Vehicles, 125 N.C.App. 123, 127, 479 S.E.2d 226, 228 (1997).
The dissent contends that the U.S. Supreme Court's recent decision in Grady v. North Carolina, 575 U.S. ----, 135 S.Ct. 1368, 191 L.Ed.2d 459 (2015) (per curiam), which held that "the Fourth Amendment's protection extends beyond the sphere of criminal investigations," means that we should revisit our holding from Combs, Hartman , and Quick. This confuses the Fourth Amendment's protection (against unreasonable searches) with a court-created remedy (the exclusionary rule). The Fourth Amendment itself "says nothing about suppressing evidence" and the U.S. Supreme Court has been clear that the exclusionary rule is a "judicially created remedy" and not a requirement of the Fourth Amendment. See Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) ; see also Stone v. Powell, 428 U.S. 465, 494 at n. 37, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (holding that "the exclusionary rule is a judicially created remedy rather than a personal constitutional right"). Thus, although Grady held that the Fourth Amendment itself applies in the civil context, it does not follow that the exclusionary rule also must apply there. Indeed, Grady dealt solely with whether imposing satellite-based monitoring on sex offenders in a civil proceeding amounted to a search under the Fourth Amendment; the decision does not even mention the exclusionary rule.
We agree with our dissenting colleague that there are strong policy reasons for applying the exclusionary rule in civil license revocation cases. Indeed, the majority in *662 this case also was in the majority in Combs, which pointed out that there was a significant split in our sister states on this issue, making it suitable for review by our Supreme Court. Combs, ---N.C.App. at ----, 767 S.E.2d at 929, appeal dismissed, review denied, - -- N.C. ----, 776 S.E.2d 194 (2015). Our Supreme Court nevertheless dismissed the Combs appeal on the ground that it did not present a substantial constitutional question, and denied discretionary review, leaving our precedent from Combs, Hartman , and Quick intact. Id.
We remain bound by that precedent until an intervening decision of our Supreme Court or the U.S. Supreme Court overrules it and-for the reasons explained above-Grady does not. Accordingly, we are constrained to reject Farrell's argument.
Conclusion
For the reasons discussed above, we reverse the superior court.
REVERSED.
Judge DILLON concurs by separate opinion.
Judge HUNTER, JR. dissents by separate opinion.

Farrell does not contend that any particular findings by the DMV are unsupported by the record, nor does he challenge the superior court's holding that there was "sufficient evidence in the record" to support all findings.